## EVIDENCE TAKEN BY GRAND JURY AFTER RETURN OF INDICTMENT.

Common Pleas Court of Van Wert County.

STATE OF OHIO v. RALPH HOOVER.*

Decided, March 1, 1913.

*Discretion of Grund Jury—Only Limited Control Over that Body Vested in the Court—Hearing of Further Testimony After Return of Indictment Not Irregular—Motion to Compel Disclosure of Evidence so Taken Does Not Lie.*

The taking of further testimony by a grand jury with reference to an offense which has been made the subject of an indictment, but under which no issue has yet been made, is a matter which is wholly within the discretion of that body, and, though unusual, such action is not irregular, and a motion does not lie to require that the defendant be furnished with a copy of the evidence so taken.

*Clark Good,* Prosecuting Attorney, and *H. L. Conn,* for the state.

*Blachly & Kerns* and *Dailey & Hoke,* contra.

MATTHIAS, J.

Decision on motion for an order for copy of evidence taken before grand jury.

On February 1st, 1913, the grand jury of this county found and returned an indictment charging Ralph Hoover with murder in the first degree, in the killing of Helen Hoover, by shooting her with a pistol.

On the 5th day of February, the same grand jury being in session, further evidence was heard by the grand jury from several witnesses brought before it by subpoena, who testified concerning said alleged crime, and also gave testimony relative

*Convicted of murder in second degree. Affirmed by Court of Appeals and Supreme Court, without opinion, 90 Ohio State.

to Ralph Hoover in connection with the investigation of the shooting of Helen Hoover.

Having presented this state of facts counsel for the defendant, Ralph Hoover, seek an order from court directing Clark Good, as prosecuting attorney, and John Trippy, as official court stenographer, to furnish the defendant a copy of all evidence, statements and testimony so taken since the finding of said indictment, referring either directly or indirectly to the offense charged and averments made in said indictment. The motion asking for such order was filed after a demand for such transcript had been duly made upon, and refused by said prosecuting attorney and court stenographer.

There is no connection, and there is no longer room for contention, that one charged by indictment with the commission of crime is entitled to a transcript of the evidence taken before the grand jury prior to the finding of the indictment, and on which the indictment was found against him. However, that too had long been a mooted question in this state until it was conclusively settled by our Supreme Court in the case of *State of Ohio* v. *Rhoads*, 81 O. S., 397, Judge Price delivering the opinion.

But it is urged that the rule there laid down does not apply to the situation here presented, for the reason that the action of the grand jury, in taking evidence relative to the same matter after the indictment in this case was found and returned, was improper and irregular; that it was in effect the taking of depositions without an opportunity afforded the defendant to be present.

It, therefore, being conceded that the court could not properly make or enforce the order now sought unless the action of the grand jury complained of was irregular, it becomes necessary to consider and determine whether the grand jury has any right or authority to take evidence relating to an offense after an indictment has been returned charging a person with the commission of that offense, particularly if the offense charged be murder in the first degree, which, in its terms, includes all the lesser crimes which are based upon wrongful assault. This question has not heretofore been raised or pre-

sented to any court, so far as counsel in. this case or the court have been able to ascertain, and there has not heretofore been any opportunity to present the question to the court in this case. We think it could not have been done by motion to quash or plea in abatement, because those pleas are necessarily based upon the indictment and the proceedings prior thereto. In considering and deciding this question, it is understood, of course, that we are determining the question as one of law upon the undisputed facts presented, and in any suggestion made or illustrations used we shall have no reference whatever to this particular case, but are only dealing with the principle involved therein.

In order to determine whether the action complained of was irregular, let us observe the statutes so far as they affect the organization and action of the grand jury. The law of the state quite clearly indicates the duties that are imposed upon the court and required to be discharged in connection with the impaneling of the grand jury, and instructing them relative to their duties, and the obligation of secrecy imposed by the law. That grand jurors bear an official relation to the court all agree, but to what extent they are under the control of the court authorities are not in accord. In fact, as said by *Edwards on Grand Juries,* none have expressed a well defined opinion as to how far the authority of the court over the grand jurors extends, or to what extent they are independent of the court. However, the weight of authority is to the effect that the limit of control over the grand jury by the court is to enforce orderly procedure by the jurors, protect their session against outside influences, and lend its process in procuring the attendance of witnesses and the production of books and papers before them. There are instances of the assertion of such power and control to the extent we have indicated, but we know of none that extend further than that. During this week, in the common pleas court at Cincinnati, a grand juror was excused from the panel, rather he was discharged by the court, because of the fact that he had taken, and caused to be transcribed, notes of the testimony heard before the grand jury, and a new grand juror was substituted.

This, we think, is illustrative of the manner of, and the extent to which the court has control of the grand jury.

It is provided by statute that "the grand jurors after being sworn shall be charged as to their duty by the judge, who shall call their attention particularly to the obligations of secrecy which their oaths impose, and explain to them the law applicable to such matters as may be brought before them." It then becomes the duty of the grand jury, "to inquire of, and present, all offenses committed within the county." The prosecuting attorney "shall be allowed at all times to appear before the grand jury for the purpose of giving information relative to a matter cognizable by it or advise upon a legal matter when required." He may interrogate witnesses, but it is not proper for him "to remain in the room with the jury while the jurors are expressing their views or giving their votes on the matter before them." It is further provided that, upon the request of the prosecuting attorney, the official stenographer of the county shall take shorthand notes of the testimony and furnish a transcript thereof to him, but to no other person, and also shall withdraw from the jury room before the jurors begin to express their views or give their votes on the matter before them. It is further provided that "when required by the grand jury or the prosecuting attorney, the clerk of the court in which such jury was impaneled, shall issue subpoenas and other process to any county to bring witnesses to testify before such jury." When an indictment is found, twelve of the grand jurors having concurred therein, such finding is indicated by an endorsement upon the indictment as required and subscribed by the foreman.

"Indictments found by a grand jury shall be presented by the foreman to the court and filed with the clerk thereof."

This, in brief, is the law of the state relative to the procedure of the grand jury. It will be observed that power is conferred upon the grand jury to require the clerk of court to issue subpoenas for witnesses to testify before it, and it may do that regardless of the wish or desire, the acquiescence or the opposition of the prosecuting attorney. The prosecuting attorney

may give information to the grand jury and it is his duty to do
so and also advise upon any legal matter when required by the
grand jury, but the duty of making inquiry and investigation,
and the entire power of taking action thereon, is vested in the
grand jury.

Attention has been directed to these provisions of law
for the purpose of showing that it is the function
of the grand jury, and the grand jury alone, to con-
duct investigation of matters which may be given it
in charge or may come to its knowledge. It is the province of the
prosecuting attorney to direct such investigation and he may in-
terrogate witnesses, but the grand jury determines the action to
be taken, and it is not permitted that the prosecuting attorney
may be present during the expression of views or taking of
votes. A great deal of power is thus conferred upon the grand
jury. It is a body drawn from the people of the county, and it
is subject to direction and control only to a limited extent as
heretofore indicated. While the grand jury is in session it is
not the province of the court to direct the grand jury that cer-
tain witnesses should be called, nor that certain evidence should
be heard, nor that any certain action ought to be taken in any
particular case that comes before them. It is clear that as to
matters within their personal knowledge they act according to
their own discretion, and the court should not attempt to con-
trol their findings.

In the case of *State* v. *Will,* decided by the Supreme Court of
Iowa, the decision being found in 65 N. W., 1010, it is held that
an indictment will be set aside on proof that it was found under
express direction of court that such indictment should be re-
turned against the defendant. We have had occasion heretofore
to apply this decision, and we call attention particularly to the
reasoning of the court. It was held that the trial court invaded
the province of the grand jury, and that the discretion and judg-
ment wisely vested by law in that body was swept away by the
positive direction of the judge, and that the will of one man was
substituted for, and in place of, the judgment of the grand jury.

Now, if the court has not the power to direct the specific ac-
tion that shall be taken in a particular case, then surely

the court has no authority to restrain the grand jury from an investigation of a matter that is properly before them, so long as, in their judgment, there is need for such further investigation.

Nor is it within the province of counsel, or of the court, upon the facts as they have been presented upon this motion, to inquire into the motive of the grand jury, nor investigate the purpose of the grand jury in hearing this further evidence after the indictment was returned. That was a matter wholly within the discretion of the grand jury, and there is nothing to indicate that that discretion was abused. Such proceeding was in no sense irregular, although it was unusual.

It is urged that upon the presentation of such an indictment no further action could have been taken by the grand jury, and that it is not the duty or province of the grand jury to gather evidence for the state and that such further action amounted only to the taking of depositions in the absence of the defendant.

At the time of the hearing of the evidence complained of, no issue had been made upon the indictment returned, and no appearance of the defendant to plead to the indictment, nor had any pleading been filed at that time raising any question as to the validity of the indictment or the proceedings prior to its return.

Was the grand jury without authority to act after such an indictment was returned? We have said we are considering this question in the abstract, and our discussion is merely of the principle involved, and not necessarily having reference to this particular case. Under the facts stated there may have been several reasons for a further investigation. It may be that evidence was suggested which indicated that there should be a further investigation to determine whether there was premeditation, or deliberate malice, and, consequently, whether the indictment to which the defendant should be required to answer should be one for a lesser crime than murder in the first degree. It may have appeared to the grand jury that there was an accessory or accomplice in the commission of the alleged crime, and that further witnesses should be called and investigation made

on that account.    It may be that some evidence had been discovered indicating the commission of a crime entirely separate and distinct from that charged in the indictment, and not embraced within its terms; it may be that the question had arisen as to whether the manner of killing and the means used were properly stated, and whether different or other and additional means or methods should have been stated, and possibly an indictment with more than one count returned.    We merely suggest these as some of the reasons that might influence a grand jury, and properly so, to make further investigation even after an indictment is returned, such as was found in this case. The presumption of the regularity of the proceedings of the grand jury still obtains.

For the reasons heretofore stated it is not the province of counsel, or even the court, upon the facts before us, to question or inquire into the purpose or the motives which move the grand jury.

It is not deemed necessary, or expedient to consider the supposed case suggested by counsel and determine to what extent and for what length of time such inquiry might proceed.    It is sufficient to state, as heretofore suggested, that at the time complained of no issue of any nature had been made upon this indictment.

Now if we assume that this proceeding was irregular and void, it is a nullity in every sense, and the court could not properly take cognizance of it for any purpose or take any action predicated upon it.

The argument that such testimony is in the nature of depositions is the same argument that was made in the Rhoads case, as is also the argument that fairness would require an order that this evidence be turned over to counsel for the defense.

This evidence is in no sense a deposition and can not be used as a deposition.    It is argued that the defendant should be in at least as good position in this respect as a party in a civil action, but is he not?    Suppose notice were not given to take depositions in a civil case, but a witness appeared before a notary public and was questioned, and gave evidence which

was taken by the attorney of the party calling him. There would be no authority for any such proceeding, but there would be no way in which the defendant could require plaintiff's counsel to surrender that evidence nor to file it in court. On the other hand, it could not be used by plaintiff's counsel as a deposition. So that the situation in the supposed case is just as we have it here.

It is suggested that prejudice results to the defendant if he be not delivered a copy of this evidence. Prejudice presupposes a loss, injury, damage or detriment of some sort, but what has the defendant lost? What injury, damage or detriment has he suffered by reason of that procedure? Has he not gained? His counsel have the benefit of the list of witnesses who testified, and to that extent it is pointed out who may be called as witnesses in court, and thus the proceeding complained of has tended to his benefit rather than his detriment or disadvantage. The defendant can not be required to disclose in advance any of his evidence nor the names of witnesses he expects to call, nor even the nature of the defense to be made by him.

It is urged that by the procedure complained of the state may find what witness not to call as well as what witnesses should be called. Undoubtedly that is true, and that occurs every day in the trial of civil as well as criminal cases. Subpoenas are issued and persons brought in as witnesses who, upon interview, it is discovered can not profitably be used by the person calling them, and they are discharged. As above suggested the defense has the benefit of the advance information that certain witnesses may be called by the state, and the opportunity of interview is thus afforded prior to the time of trial.

Counsel concede that the defense is not entitled to the evidence upon which the indictment was found, but insist that it is entitled to the evidence upon which the indictment was not found.

The statute requires that the official stenographer, "at 'the request of the prosecuting attorney, shall take shorthand notes of the testimony" before the grand jury "and furnish a transcript thereof to him, *and to no other person,*" and there is no ex-

press or implied authority conferred upon the court to require the official stenographer to do that which the statute clearly and expressly prohibits. The prosecuting attorney has these notes in lieu of memoranda of evidence kept by himself, and he can no more properly be required to surrender the transcript furnished him exclusively, in the manner provided by law, than he could to hand over the memoranda from his vest pocket.

It is argued, as we have suggested, that the defendant should be put upon equality with the state. That is the precise argument that was made in the Rhoads case and was disposed of in the decision by Judge Price in language concise and clear:

"Neither the rules of courtesy nor supposed equitable consideration should be allowed to subvert the practice sanctioned by long experience. The state can not compel the prisoner at the bar to submit his private papers or memoranda to the state for use or even examination, for he can not be required to testify in the case, nor to furnish evidence against himself. Then why should the accused be allowed to rummage through the private papers of the prosecuting attorney? Neither the sublime teachings of the Golden Rule, to which we have been referred, nor the supposed sense of fair play, can be so perverted as to sanction the demands allowed in this case."

The motion is overruled.