## W. J. CLAIR v. STATE OF NEBRASKA.

FILED MAY 15, 1894.    No. 5292.

1. **Grand Jury**: CHARGE BY COURT: DISCRETION. A wide discretion is allowed to the presiding judge in directing the attention of the grand jury to particular subjects of inquiry, or to particular offenses or classes of offenses, and that discretion appellate courts will not assume to control.

2. **Exceptions to Charge to Grand Jury**: CONTEMPT. But

where a party indicted, in the honest belief that he has been prejudiced by an abuse of discretion by the judge in his charge to the grand jury, in respectful language alleges the action of the judge as error, in order to secure a ruling thereon, he is not guilty of contempt of court.

3. ——: ——. So *held*, although he mistakes his remedy by assailing the charge of the judge by motion instead of by plea.

4. Grand Jury: EXISTENCE OF FACTS. The existence of facts which will warrant its finding of an indictment is a question for the grand jury, and should not, as a rule, be assumed by the judge.

5. Inflammatory Charge by Court to Grand Jury. A charge to the grand jury which, after assuming that the crime of bribery had been committed and that it was the duty of the jurors to indict therefor, concluded as follows: "There comes up from the people a command for a 'forward march' all along the line of your duty. You should give heed to that cry, for it comes from a patient and long suffering endurance which has at last reached its limit." *Held*, That the term "inflammatory," as applied to said charge, is a merited criticism.

ERROR to the district court for Douglas county. Tried below before SCOTT, J.

The facts are stated in the opinion.

*Charles Offutt, W. D. McHugh,* and *Lee S. Estelle,* for plaintiff in error:

Filing the motion to quash the indictment did not constitute a contempt of court. (Rapalje, Contempts, sec. 28; *Mullin v. People,* 24 Pac. Rep. [Col.], 880; *In re Dalton,* 26 Pac. Rep. [Kan.], 673; *Ex parte Curtis,* 3 Minn., 274; *Neel v. State,* 9 Ark., 259; *Dunham v. State,* 6 Ia., 245; *State v. Anderson,* 40 Ia., 207; *McFadden v. Reynolds,* 11 Atl. Rep. [Pa.], 638; *Thomas v. People,* 23 Pac. Rep. [Col.], 327.)

The charge to the grand jury was inflammatory and prejudicial. (Criminal Code, sec. 397; *Charge to Grand Jury,* 2 Sawyer [U. S. C. C.], 669; 2 Hale, Pleas of the

Crown, p. 161; Chitty, Criminal Law, p. 312; Thompson
& Merriam, Juries [ed. 1882], sec. 597; *State v. Turling-*
*ton,* 102 Mo., 642.)

*George H. Hastings, Attorney General,* for the state.

POST, J.

This is a petition in error and brings before us for re-
view the judgment of the district court for Douglas county,
whereby the plaintiff in error was adjudged guilty of con-
tempt of court and sentenced to pay a fine of $25, and in
default thereof to be committed to the county jail. The
alleged contempt consists in the filing, as attorney for the
defendant, in the case of State of Nebraska v. Edward F.
Moriarty, then pending in said court, of a motion in the
following language:

Comes now the defendant in the above entitled cause and moves
the court to quash the indictment herein for the following reasons,
to-wit:

First—That the charge heretofore given to the grand jury, who
found the indictment herein, by the Honorable C. R. Scott, judge,
was inflammatory and prejudicial, in that said charge aroused the
prejudice of said grand jury so that they were not fair and impartial
grand jurors. Said charge is filed in the office of the clerk of this
court, and is herein referred to and made a part of this motion.

Second—That the said indictment does not charge any offense un-
der the laws of the state of Nebraska.

Third—That said indictment is insufficient in law and is not spe-
cific enough, in that it fails to point out what said claim and bill of
said C. E. Squires it was that was before the city council at the time
of the alleged commission of said crime.        W. J. CLAIR,
                                                SILAS COBB.
                                        *Attorneys for Defendant.*

For a perfect understanding of the essential facts in the
case it is proper to state that there are for the fourth ju-
dicial district seven judges, six of whom are assigned to
Douglas county and usually engaged in the disposition of
causes on separate dockets. Judge Scott, who presided
over the criminal division of the court at the opening of

Clair v. State.

the February, 1892, term, gave to the grand jury the charge mentioned in the motion above set out, and to which an extended reference will hereafter be made; but to Judge Davis was assigned the trial of criminal causes for the term.   On the 19th day of March following, while Judge Davis was engaged in the trial of Moriarty on the charge of bribery, upon an indictment found by the grand jury previously charged by Judge Scott, the following proceedings were had, quoting from the bill of exceptions:

Be it remembered, that on March 19, 1892, in the criminal court room No. 1 of the court aforesaid, Judge Davis presiding, on the trial of the State of Nebraska v. Edward F. Moriarty, at about 11:45 A. M., the said jury in said cause were dismissed until the afternoon hour of adjournment, to-wit, 2 o'clock P. M., by his honor Judge Davis, and just about that time, and shortly before the said jury were dismissed, his honor Judge Scott took the bench in connection with Judge Davis, and after the retirement of said jury his honor Judge Scott called attorneys W. J. Clair and Silas Cobb, the same who are defendants herein, and calling their attention to a motion which has been filed by the said attorneys to quash the indictment against said Edward F. Moriarty, and which said motion is in words as follows [referring to the motion copied above]; and thereupon the said Judge Scott asked said attorneys if this was their motion [holding the same in his hand], to which question they both answered that it was, and that their names were signed to it; whereupon said Judge Scott asked them if they were willing to strike out the first count of said motion as above, and they were asked if they knew of any statute authorizing the filing of such a motion; whereupon Mr. Clair said:

"I will state for myself that the motion was not filed under any provision of the statute that I know of.   I never looked to see whether there was a provision of that kind, but I proposed to fix myself in such a position by the filing of that motion that if it were necessary in taking this case to the supreme court, I could raise the question as to whether or not the charge of the grand jury, given at the beginning of this term by your honor, was one which is contemplated by the law of this state.   I simply did it as an attorney.   I did not do it for the purpose of casting any reflection one way or the other."

Mr. Cobb said: "I was a party to the filing of the motion.   I filed it myself.   Mr. Clair and myself prepared it in my office.   I did it in good faith.   I did it with no disregard for the court who gave the instructions to the grand jury heretofore.   I did it after consultation, and, in fact, upon the suggestion of one of the oldest criminal practi-

tioners at this bar. In fact, to show that I had no ill-faith in the matter, I did it thinking it was simply doing my duty to my client, and at the suggestion of this attorney who has practiced at the bar. I do not desire to give his name."

Judge Scott: "Do you refuse to disclose his name?"

Mr. Cobb: "Yes, because I do not think it is necessary. An attorney who has practiced at this bar for years, one of the best lawyers, civil or criminal, at this bar. But I am not giving that to clear my skirts, but to show my good faith; and, as I tried to say, I did it, furthermore so that we, as attorneys for the defendant, would have the advantage of everything that it was our duty to take advantage of; and I considered it, and I consider it at the present time, my duty to take advantage of everything that has gone before the grand jury as well as the jury. I think that is what an attorney is employed for. I consider that he would not be doing his duty if he considered that this might be held by the supreme court as one of the grounds of reversal. I say I consider that an attorney would not be doing his duty unless he did all these things. And with no disrespect to the court I did what I thought was my duty to my client."

Judge Scott: "Do you know of any provison of the statute that makes that a ground to quash?"

Mr. Cobb: "I do not know of any provision in the statute. I do not know whether there is or not."

Judge Scott: "Gentlemen, you are both young men and I do not wish to injure you. I know that sometimes attorneys, and especially young attorneys,—sometimes old ones,—in the flash of the moment and amid excitement, say things and do things which are a reflection and which should not have been said or put in the record. You say here that 'the charge of the court heretofore given to the grand jury, who found the indictment herein, by the Hon. C. R. Scott, judge, was inflammatory and prejudicial,' and that 'said charge aroused the prejudice of said grand jurors.' You both admit that there is no ground laid down in the statute for quashing the indictment as contemplated by the matters I have just read."

Mr. Cobb: "I do not know that we do."

Judge Scott: "I will give you an opportunity to strike it out if you are so advised. It is a direct charge at the court of prejudicing the grand jury by an inflammatory charge. You look at the word 'inflammatory' and you will see that it has a bad meaning when applied to a court. I will give you an opportunity to strike it out."

Mr. Clair: "I would like to take time to consider it."

Judge Scott: "You will do it now or not at all. It is my turn now."

Mr. Cobb: "At the present time I am not prepared to strike out anything from the motion that we have filed heretofore. In consid-

Clair v. State.

eration of the fact that we are called upon peremptorily to do so ' now or never,' my answer will be 'never.' If I were permitted to deliberate for an hour or two, I might be led to strike it out; but in due consideration for my client, still believing that that would be one of the things that would possibly promote his interests in the trial of this case if taken to another court, I refuse to strike anything, so far as I am concerned, from the motion."

At this point both defendants were adjudged to be guilty of contempt, although the colloquy was continued at considerable length and ending with a statement by the judge that further action would be deferred until the termination of the trial with which the accused were engaged; but, according to the transcript, sentence appears to have been pronounced immediately. The charge in question is a lengthy and able discourse on the duties of grand jurors, in which especial prominence is given to the crime of bribery, as shown by the following quotations therefrom:

Bribers and bribed alike are, as other criminals often appear to be, moving in straight lines, when their ways are most devious and serpentine. Nor should you expect always to find a money consideration, paid direct, as the price of the bribery, as criminals generally act upon the principles of "indirect radiation." It takes two or more to commit bribery,—the briber and the bribed;—purchaser and seller. Both are guilty, and both should receive merited mention in your proceedings. Such criminals as these are defiantly walking our streets, sneeringly, brazenly, and insultingly bidding defiance to the law that punishes bribery, by asking, "What are you going to do about it?" If you do your duty as a grand jury, such criminals will have no occasion or excuse for asking that question hereafter.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

If any public officer converts or diverts the public funds under his care, or subject to his direction or control, or directly or indirectly uses them in whole or in part for his own or his friends' personal advantage, benefit, or emolument, he also is a criminal; and you should not abate your energy, or forget your obligation, or be discharged, until all such public officers, whether now in or out of office, are made to know, by proper bills of indictment (if the evidence can be had before you by the exercise of diligence on your part), that the people will not longer be robbed by their public officials, without a pronounced protest, so long as there remains room for convicts in the state penitentiary, and a grand jury can be found to do its duty.

\*　　\*　　\*　　\*　　\*　　\*　　\*

· A dishonest public official, whether ministerial, legislative, or judicial, is a public menace, and should be hunted down as a blighter of public confidence and a peculator and speculator upon the property and rights of the public; a perjurer who makes merchandise, for his own selfish and corrupt purposes, of the confidence and faith reposed in him by the people; worse than a highway robber, because his victims, the people, have not a fighting chance to protect themselves ere he robs them.    To call such an officer a thief would be flattery.    That such persons have held office, within the boundaries of this county and within the statute of limitations, is quite manifest, unless all indications point the wrong way.    Nor will you have to exercise a very high degree of diligence to find them if you are looking for public criminals.

\*    \*    \*    \*    \*    \*    \*    \*    \*

A little well directed effort on your part, as grand jurors, in the direction here indicated would doubtless open up a field into which a stone could not be thrown without hitting a criminal.    You should see to it that the stone is thrown, and thrown hard.    You owe it to yourselves, the people whom you represent in your present service, and to your sworn obligations to make that effort, and to make it with such an uncompromising zeal that hereafter a mark more indelible than that put upon Cain shall be stamped upon their foreheads, marking them as " ticket-of-leave-men " and moral blisters upon the body politic.

There comes up from the people a command for a "forward march" all along the line of your duty.    You should give heed to that cry, for it comes from a patient and long suffering endurance which has at last reached its limit.

1. The first question suggested by the record is whether the term "inflammatory," as applied to the charge of the judge, is an unmerited criticism.    The adjective "inflammatory," as here used, is derived from the verb "inflame," which is thus defined: 1. "To set on fire; to kindle; to inflame."    2. "To excite or increase; as, passion or appetite; to enkindle into violent action."    3. "To exaggerate, aggravate, in description."    4. "To heat; to excite excessive action in the blood vessels."    5. "To provoke; to irritate to anger."    6. "To increase; to exasperate."    7. "To increase; to augment." ( *Vide* Webster's Dictionary.)    Fairly construed, the charge under consideration is an impassioned appeal, if not indeed an express direction, to the grand jury to present by

indictment certain persons not named, but who are assumed to be guilty of the crime of bribery. In that sense, if not inflammatory, it is at least what in the science of medicine is denominated " heroic treatment." In directing the attention of the grand jury to particular subjects of inquiry, or to particular offenses or classes of offenses, a large discretion is conferred upon the presiding judge, and which discretion appellate courts will not assume to control. In this instance we assume that sufficient ground existed within his knowledge for the giving of especial emphasis to the crime of bribery; but when resort is had to a remedy so drastic as that here adopted, it must be with the understanding that parties whose rights are affected thereby may by a proper proceeding call for judgment upon the action of the court or judge in order to determine whether there has been an abuse of discretion to their prejudice. This we understand to have been the object of the motion to quash the indictment against Moriarty, and is, we think, a sufficient justification in this prosecution, unless a different rule is to be applied on account of the mistake of remedy in presenting the question by motion instead of by plea, a subject which will be hereafter considered.

2. We are constrained, after a careful consideration of the subject, to regard the objection made to the charge, so far as it assumes the commission of the crime of bribery, as a merited criticism. While doubtless intended as an admonition to the jurors with respect to their duty, it cannot be construed otherwise than as an invasion of their province, which amounts to an abuse of discretion. The finding or presentment of the grand jury of necessity includes two elements, viz., first, the *corpus delicti*, and second, a finding that the offense named was committed by the persons charged. Both facts must be found by the jurors and cannot be dictated by the judge. The history of the English constitution presents no more interesting or instructive field for study than the long and stubborn contest between the

people and commons on one side, and the ministers and judges on the other side, concerning the independence of grand and petit juries, and the right of the judiciary to dictate verdicts and bills of indictment. We are told that during the existence of the star chamber it was the practice to punish jurors by fine and imprisonment for refusing to find verdicts and indictments when commanded by the judges; and according to 2 Hallam [standard ed.], 227, such punishments were not infrequent at the time of the Restoration, in 1660, and until declared to be illegal by Sir Matthew Hale, who subsequently said: .

The privilege of an Englishman is that his life shall not be drawn in danger without due presentment or indictment; and this would be but a slender screen or safeguard if every justice of the peace, or commissioner of oyer or terminer, or gaol delivery, may make the grand jury present what he pleases, or otherwise fine them. (2 Hale, Pleas of the Crown [Eng.], 161.)

The development of this branch of the law during the next century is shown by the observation of Mr. Chitty in his treatise on Criminal Law (vol. 1, 312), where, referring to the duty of the court in charging the grand jury, he says: .

In the performance of this duty, the judicious magistrate will take care, not only that his remarks are, in general, suited to the offices which a grand jury have to discharge, but have a plain reference to local objects, events, discussions, and concerns, as far as they properly fall within the limits of his jurisdiction, and seem entitled to his notice. He will strive to allay animosities, to destroy the spirit of party, to discountenance every receptacle of idleness and vice, as well as every vestige of popular barbarity and grossness.

The trend of judicial sentiment in this country is illustrated by the language of Justice Field of the supreme court of the United States, who, in charging a grand jury in the year 1872, said it was—

designed as a means of not only bringing to trial persons accused of public offenses upon just grounds, but also as a means of protecting the citizens against unfounded accusation, whether it comes from government, or be prompted by partisan passion or private enmity. (See 2 Sawyer [U. S. C. C.], 669.)

Clair v. State.

In the recent case of *Turlington v. State*, 102 Mo., 642, it was shown on the trial of a plea in abatement that in charging the grand jury which returned the indictment for murder the presiding judge had said :

Your sheriff has been assassinated—not assassinated, but murdered —in the jail of your county by one whom he had in charge at the time. It is your duty, gentlemen, to investigate this matter. The crime is no greater because it was committed in the jail, for murder is murder, and the aggressor is equally responsible for the crime as is he had met his victim on the street and shot him down. What the circumstances of the killing were is not for me to say. It is my duty to give the charge to the jury, and it is then your duty to hear this matter when it comes before you, and treat each party fairly, and after your determination of the case, the court sits here for the protection of the accused as well as for the public. Whether the crime was committed in the jail I don't know, and it is not for me to say; but if you find that such a murder has been committed in your jail, whether it was the object of this party to secure his liberty or not, makes no difference whatever. It is my duty, gentlemen, to charge you in regard to this matter; it is your duty to investigate the matter, and, if you find the facts sufficient to justify you in believing that there has been a murder committed in your jail, you should find an indictment against the party committing it.

The charge was held not prejudicial, on account of the caution contained in the concluding paragraph ; but referring to the language quoted above the supreme court say :

It is manifestly improper for a circuit judge, in his charge to a grand jury, to express an opinion as to the guilt or innocence of a party accused of a crime to be investigated. The action of the grand jury is a part of the judicial proceedings which may terminate in a conviction and sentence of the accused. The court sits in judgment between the state and her citizens, and should "hold the scales with a firm hand, without bias or prejudice." The language of the judge in this case was improper, and cannot be justified.

It is true that case differs from the one before us, inasmuch as reference was therein made to a particular person as guilty of murder. The difference is, however, in degree only and not in principle. Here, although the charge does not point to any particular person, it is emphatically declared that the crime of bribery and receiving bribes by public officers has been recently committed in Douglas

county, accompanied by direction to the jurors to indict some person or persons therefor, and a reminder that a demand has come up from the people for a "forward march," and that a patient and long suffering endurance has at last reached its limit. We must not be understood as intimating that the presiding judge is in every case prohibited from assuming that indictable offenses have been committed, concerning which it is the duty of the grand jury to inquire. We can conceive of cases which may be committed *in facie curiæ,* and possibly others of which it is the duty of courts to take notice without proof, but such cases are exceptions. Here, according to the record and as conceded by the state, the crime of bribery was a pure assumption, perhaps correctly assumed, but of which the judge possessed such information only as was derived from current rumor. The reference to the conditions of the public sentiment above mentioned is especially unfortunate and for which the charge is justly subject to criticism. Public sentiment, in a representative government, controls in the solution of political questions; but we recognize in it a dangerous force when it seeks to dictate judicial decisions. So potent is this proposition that further discussion of the question is deemed superfluous.

3. It is conceded that the remedy was by plea, and not by motion to quash; but, as we have seen, it was Moriarty's right to put in issue the question of the propriety of the charge, and the fact that he mistook his remedy, to his prejudice, we regard as unimportant. The accused appears to have acted in perfect good faith in advising and signing the motion, and should not be held to a stricter liability than he would have incurred had he alleged the same facts in a plea in abatement. The judgment of the district court is reversed and the cause remanded for further proceedings in accordance with the views herein stated.

REVERSED AND REMANDED.