CHARLES FULLER *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Charge to grand jury.* *Code* 1892, § 2373. *Unlawful sale of intoxicants.* *Indictment.* *Quashal.*

Although the statute, Code 1892, § 2373, requires the circuit judge to charge the grand jury touching its duty, and requires him especially to give in charge the statute against the unlawful sale of intoxicants, it is improper for the judge, directly or indirectly, to designate a particular individual as making such sales. If he does so, and the individual be indicted for the crime, the indictment, on seasonable motion, will be quashed.

2. SAME. *Judicial indiscretion.*

A conviction for the unlawful sale of intoxicants will be reversed if, on overruling defendant's application for a continuance, the trial judge, in the presence of jurors, announce that there has been much complaint about the failure to convict "these criminals," and that the court feared it was largely due to continuances.

FROM the circuit court of, first district, Hinds county.

HON. DAVID M. MILLER, Judge.

Fuller, the appellant, was indicted, tried, and convicted of the unlawful sale of intoxicants, and appealed to the supreme court. The facts upon which the decision turned are well stated in the opinion of the court.

*Thompson & Stricker,* for appellant.

The motion to quash the indictment in this case should have been sustained because of the improper remarks made by the

trial judge in his charge to the grand jury which found the indictment. *Welch* v. *State,* 68 Miss., 341; *Wilson* v. *State,* 70 Miss., 595; *Blau* v. *State,* 82 Miss., 514.

In *Wilson* v. *State, supra,* the court laid down the correct lines upon which grand juries should act in the following words: "Immunity from prosecution on indictable offenses, except by presentment by the grand jury, is declared and preserved by the organic law of this and all other states; and though, by reason of the secrecy of the proceedings of that body, its action is seldom brought into review, it cannot be doubted that one whose acts are there the subject of investigation is as much entitled to the just, impartial, and unbiased judgment of that body as he is to that of the petit jury on his final trial, nor that it is essential before the one body as before the other that private ill will or malevolence shall be excluded."

This principle was grossly disregarded in this case, and the grand jury went into their room, before having heard a word of testimony, with their minds biased against appellant. There is no answer to the query as to why the judge should have called the defendant by name in connection with his charge to the grand jury touching this crime, except that he, the judge, considered the defendant in the light of a lawbreaker and believed that he should be indicted.

The ancient practice of forcing grand juries by fines and imprisonment to bring in indictments against particular individuals has long since been regarded by civilized nations as a barbarity, and anything attempted along that line now would be regarded as criminal. The grand jury at any time may call upon the judge or district attorney for advice, and may, with all propriety, receive the same, but this advice must be confined to questions of law, and it is never the function of a court to charge a grand jury as to what particular person is guilty of a crime.

In the very recent case of *Blau* v. *State* this question is fully discussed by this court, and the principle distinctly laid down

that our grand juries should be kept free from all outside influence whatsoever, and that any attempt by a trial judge to influence their findings constitutes reversible error.

It is always well for a prosecuting attorney and a circuit judge to be zealous in the discharge of their duties, and they should seek, by all lawful means, to free their district of vice and crime, but they should be exceedingly careful that their zeal for convictions does not lead them to do an injustice even to the humblest citizen. These same observations apply to the statement of the trial judge made when he denied appellant's motion for a continuance.

*William Williams,* attorney-general, for the appellee.

[The brief of the attorney-general was lost or withdrawn from the record before it reached the reporter.]

Argued orally by *Robert P. Thompson,* for the appellant, and by *J. N. Flowers,* assistant attorney-general, for appellee.

TRULY, J., delivered the opinion of the court.

The court met on the 5th day of September, 1904, and the grand jury returned the indictment against appellant on the fourth day of the term. When arraigned for trial, and before plea, appellant. filed a motion to quash the indictment in his case. The ground on which this motion was based was the language of the trial judge in his charge to the grand jury at the impaneling thereof upon the organization of the court. The motion recites as follows: "That the said grand jury was, after being impaneled and sworn as such, charged by the court in the following words—to wit: 'Have you never heard the name of Charlie Fuller?' That such language was used by the court in that connection of his charge referring specially to the illegal sale of liquor, the duty of the grand jury to find indictments therefor. That by reason of such language said grand jury was unduly influenced against defendant, and his name specifically given to them as one who should be indicted by them." There

was no denial on the part of the state of the facts alleged in the motion to quash, but the court, upon consideration, overruled the same, and this ruling of the court constitutes one of the assignments of error.

After the motion to quash had been by the court overruled, the appellant pleaded not guilty, and presented an application for a continuance of his case or postponement thereof to a future day of the term. We find it unnecessary to set out the grounds of the application in this connection. Upon presentation of the motion for a continuance the court overruled the same, and in his ruling remarked, "There has been much complaint over the state about the failure to convict these criminals;" the court continuing "that it feared much of this was due to the application of defendants' lawyers for continuance, the disposition of the courts to indulge it, and the lack of speedy trials." Exception was taken to this language, which was used in the presence and hearing of the petit jurors who had been impaneled for the week. The court stated, when the exception was presented, that he did not use the word "these;" the court only said "criminals throughout the state." Several lawyers, who were bystanders, were introduced to ascertain their remembrance of the exact language employed, and the majority of them were of the opinion that the court used the words as set out in the exception reserved by the defendant. This action and language of the court is also assigned for error. The motion for a continuance having been overruled, a jury was impaneled, the case tried, the defendant convicted, sentenced to the maximum penalty, and he appeals.

Many assignments of error are presented. Some we regard as not worthy of serious consideration. We confine our rulings to those questions involved in the necessary decision of the case. Those are two, and, as both are founded upon alleged improper language of the trial judge, as hereinbefore set out, though arising at different stages of the trial, we will consider them under the same head, without going into a refined discussion of each

incident separately.  It was said by this court in *Blau* v. *State,* 82 Miss., 521 (34 South., 153), through Price, J.:  "In directing the attention of the grand jury to particular offenses or classes of offenses, to crime and the necessity of suppressing it, a very large, necessary, and useful discretion is conferred upon the presiding judge, and this court will not undertake to control that discretion unless manifestly abused."  This was announced as the conclusion of this court after an able discussion of the powers and duties of the circuit judge, in the course of which numerous authorities are cited and analyzed.  We have nothing to add to or take from the statement quoted.  By § 2373, Code 1892, it is made mandatory for the circuit judge to charge the grand jury concerning its duties and to explain the law to it as he shall deem proper.  It is required that he shall give certain statutes particularly in charge, and shall call the attention of the grand jury to its duty to examine in reference to violations of such other statutes as he may deem proper under the circumstances as they then, to his knowledge, exist.  Among the statutes which by law he is specifically directed to call to the attention of the grand jury is the one against the unlawful selling of intoxicating liquors, and others relating to vice of different kinds.  The circuit judge is vested with power to specifically call the attention of grand jurors to all statutes which the public interest may require shall be brought to the consideration of the grand jury.  This grant of power carries with it the authority to decide what class of offenses the public interest demands shall receive special attention by the grand jury.  And in deciding this the circuit judge must necessarily be guided, to a great extent, by his knowledge of the social conditions as they exist in each county at the time when the grand jury is impaneled therein.  Those statutes which may be most flagrantly and openly violated in one county of his judicial district may be strictly observed in another, and the same offense which is conspicuous for its presence in some communities may be equally as conspicuous for its absence in others.  It would be folly to

hold that a circuit judge should not be permitted to charge the grand jury in reference to a particular class of crimes, for the reason that such charge might have the effect of directing the attention of the grand jury to the individuals who are guilty of the crimes. In truth, this is the object at which the charge to the grand jury is aimed, the purpose which it hopes to effect. The circuit judge being a conservator of the peace, and, in the discharge of his duty, having the peace and quiet of the entire district much at heart, being well advised as to the conditions existing in every locality within his district, his charge to the grand jury is intended to direct their deliberations into the channel which will result in the greatest good to the people of the entire county where the grand jury is impaneled. But while it is the duty of the circuit judge to so direct the attention of the grand jury, and while he is vested with vast power and fullest discretion in choosing the statutes upon which he will base his charge to the grand jury, and while he stands as a sentinel to watch and guard the interest of the people, and has authority to suggest to the grand jury the course their investigation should take, he is not a prosecutor of any particular individual, no matter how flagrant and notorious his violations of the law by current report or popular rumor may be. It is the province of the circuit judge and his duty to inveigh against crime of all kinds and in every quarter, but it is a usurpation of power to denounce individuals, or to specifically direct the attention of the grand jury to any named person. It is not every man who is accused of crime who is guilty; and every man, whether accused or not, is entitled to the presumption of innocence until legally convicted. This presumption is binding upon the petit jury, and stands as a witness in favor of the defendant when on trial. It guards him before the grand jury until their investigations have produced proof believed by them which overthrows it. It protects him from the circuit judge in his charge to the grand jury, and forbids that any word from that high station, so apt, on account of its dignity and importance, to influence by its slightest

utterance, should prejudice the grand jury when it enters upon the consideration of violations of the law. Every person accused of crime has the right to have his case investigated and passed upon by a fair and impartial grand jury, whose ears have never heard a suggestion of guilt from the presiding officer and whose minds have not been prejudiced by any statement showing the opinion of the trial judge. If the grand jury is to be kept free, as has been repeatedly announced by this court, from all undue outside influences, of what grave importance is it that this undue influence should not proceed from the very officers to whom they must look for guidance and whose decision and judgment they must take as the law! And the general observations made upon this line apply with equal force to all utterances of presiding judges which, during the progress of a trial, might inure to the prejudice of defendants accused of crime. "Four things belong to a judge: to hear courteously, to answer wisely, to consider soberly, to decide impartially." This rule of conduct embodies the wisdom of the ages, and has never been improved upon during all the lapse of time since enunciated by the ancient sage and philosopher. It is the duty of the trial judge to do all in his power to conserve the public interest, to see that the peace and quiet of the country are preserved, and to administer the law with firmness, yet with unswerving justice and impartiality. In the instant case we are constrained to hold that each of the assignments of error based upon the language of the trial judge is well taken. His charge to the grand jury, in which, by name, he called attention to a particular individual, and the connection in which the language was used, must necessarily have grievously biased the minds of the grand jurors against the person so invidiously singled out. It is no reply to this conclusion to say that the words as quoted in the motion to quash are not of themselves either denunciatory or accusatory of the person named. We must view this matter in a reasonable way. When we remember that the attention of the grand jury was at this very time being specifically directed to the violations of the law pro-

hibiting the unlawful sale of vinous and spirituous liquors, and while the trial judge was impressing upon the grand jury the duty which their oaths imposed upon them to indict all violators of that law, the naming of any particular person in this direct connection was tantamount to a statement to the grand jury that, in the opinion of the trial judge, he, the party so named, was guilty of violating the statute then being discussed. From this point of view further discussion is unnecessary to show to any candid mind that such an utterance, made under such circumstances, must inevitably have infringed upon the constitutional right of the appellant to have his case investigated by a fair and impartial grand jury, free from all outside influences.

The remarks of the trial judge in overruling the application for a continuance were likewise unwarranted, and peculiarly unfortunate. However potential public opinion may be in many of the most important affairs of public and political life, surely it should wield no influence with the courts, or with the judges presiding at the trial of any person accused of crime, when passing upon the rights of the accused. The fact, if fact it was, that there was widespread complaint throughout the state about the acquittal of criminals, certainly constituted no reason why this appellant should be deprived of any of his rights. The heat of public opinion should not rise to the altitude of the high station occupied by judges nor be allowed to affect the administration of justice before the courts. The remarks of the trial judge are justly subject to criticism when viewed in another light. The appellant was not at that time, in the eyes of the law, in any sense a "criminal," and to so refer to him was an invasion of his rights, and must of necessity have operated to his prejudice with the jurors who were afterwards impaneled to try the case and in whose presence and hearing the remarks were made. Whether we accept as being accurate the language attributed to the trial judge in the bill of exceptions or that which he candidly acknowledges using, the effect was the same, and conveyed to the prospective jurors a distinct intimation

that in the eyes of the trial judge the defendant who was then being called upon to answer the state upon the charge preferred against him was a criminal, and that his application for a continuance was simply a subterfuge resorted to in an effort to evade the law. We think such language inexcusable, and are inclined to believe with the district attorney, who testifies in the record that in his judgment it was "a slip of the tongue" on the part of the court; but, nevertheless, it placed an additional burden on appellant, and, in the absence of explanation or correction, operated to his prejudice. The rights of every individual accused of crime should be scrupulously guarded and free from invasion from any source. It is, of course, of great importance that every guilty man should be brought to justice, but it is of far greater and more vital importance that all, whether guilty or innocent, should receive a fair trial. This is the only protection afforded to the innocent who unfortunately may be accused of crime. The deliberations of the juries, both grand and petit, must be preserved inviolate from all outside influences, no matter from what source they emanate. The judge, by express statutory enactment, is forbidden to "sum up or comment on the testimony, or charge the jury as to the weight of evidence." It is certainly contrary to the policy of our law, and flagrantly violative of the fundamental principles of justice, for a judge to inject his opinion of the guilt of a defendant, based merely upon rumor or private information, into the minds of the jurors who may be impaneled to pass upon the question of his guilt or innocence.

We are convinced that the trial judge was merely led away by his zeal to see that the laws are enforced, with no thought of depriving the appellant of any legal right; but the rights here invaded are so vital in their nature that the infringement of them was practically a denial to appellant of his constitutional guaranty of a fair and impartial trial. The trial judge should have recalled that "virtue itself 'scapes not calumnious strokes."

Appellant may be innocent notwithstanding rumors to the contrary may have reached the ear of the trial judge.

*Reversed, motion to quash sustained, and cause remanded.*