## CROCKET DAGGS v. STATE.

No. A-2087. Opinion Filed November 11, 1915.

(155 Pac. 489.)

1. **INDICTMENT AND INFORMATION—Motion to Set Aside— Conditions Precedent.** Before a defendant in a criminal action is entitled to be heard on a motion to set aside an indictment, he must bring himself clearly within the provisions of the code of criminal procedure. (Section 5780, Rev. Laws.)

2. **INDICTMENT AND INFORMATION—Impanelment of Grand Jury—Right to Challenge—Waiver.** In order to entitle a defendant who is in jail and who desires to be present at the impanelment of the grand jury, or when the grand jury is charged as to the offense for which he is held, he or his counsel should ask permission to appear for the purpose of making challenge. When this has not been done, he cannot be heard to attack the indictment because he was not present and accorded the right to challenge.

3. **WITNESSES—Cross-Examination—Relations With Accused.** The state has the right, on cross-examination, to show the nature of the relations existing between the witness and the defendant, so far as their relations are such as would create a bias that might reasonably be supposed to affect the credibility of the witness, and this rule cannot be changed by the fact that such evidence would probably prejudice the defendant in the minds of the jury.

*Appeal from District Court, Pontotoc County;*
*Tom D. McKeown, Judge.*

Crocket Daggs, was indicted for murder and convicted of manslaughter in the first degree; and he appeals.    Affirmed.

*Crawford & Bolen* and *West & Willborn,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, P. J.   The plaintiff in error, Crocket Daggs, Mart Lancaster, and Jim Rogers, were indicted in the District Court of Pontotoc county for the murder of Mrs. May Harrison, in said county on the 18th day of February, 1913.

When the case was called for trial a severance was demanded and allowed, and the state elected to try Crocket Daggs.   Upon his separate trial he was found guilty of manslaughter in the first degree, and his punishment fixed at imprisonment in the penitentiary for a term of twenty years.   From the judgment rendered in pursuance of the verdict, he appeals.

The evidence shows, or tends to show the following facts: On the night of the tragedy, a dance was given at the country home of J. A. Tillery, eight or nine miles west of Ada, which was attended by several people in the neighborhood, including Lon Harrison, and Mrs. May Harrison, his wife, who had with them their two babies.   The defendants Crocket Daggs and Mart Lancaster, accompanied by two women known among other names as Ida Eldridge and Zada McGee, drove out from Ada that evening, and arrived at Mr. Tillery's home about nine o'clock; they had not been invited and were known to only a few of those present.

Shortly after their arrival Mart Lancaster made an insulting remark to Stella Stewart, who was talking to her sister, Mrs. May Harrison at the time.   Lon C. Conley spoke to Lancaster and said, "Please do not insult any more ladies," and Lancaster answered that "he had not insulted any ladies, and whoever said that he insulted a girl was a damn liar."   Miss Stewart stepped between them and said she did not want to have any trouble.

Crocket Daggs went to the front door and called the defendant Jim Rogers, saying: "Oh Jim, come here they are beating Mart up." Rogers came into the room and pulled a six shooter and struck Charley Stewart over the head and knocked him down and then struck Roy Page with it, instantly the shooting commenced. Several witnesses for the state testified that Mart Lancaster had a small automatic pistol in his hand at the time, and that Crocket Daggs fired the first shot. Five or six shots were fired in quick succession. Four bullets entered the ceiling; the lamp went out when the first shot was fired. Those present rushed out of the room. A light was brought and Mrs. May Harrison was found lying on the floor dead with a gun shot wound in the head. A thirty-eight caliber soft nose bullet had entered her left temple. Crocket Daggs and Mart Lancaster and the two women who came with them left and drove back to Ada. Reaching there they stopped at the home of Mrs. Frank Winters, a sister of Crocket Daggs, where Daggs left a thirty-eight caliber pistol, which was found there the next morning. They then went to Shorty Worthington's where they were found and arrested by the chief of police of Ada.

Two or three witnesses for the defense testified that Jim Rogers fired the first shot. Crocket Daggs did not testify.

The defendants when called upon to plead moved to set aside the indictment, because the grand jury returning the same was not drawn and impaneled as provided by law; that said defendants were in custody and were not permitted to be present in court at the time said grand jury was by the court specially charged as to this offense as required by law.

The motion did not conform to the requirements of Procedure Criminal, sec. 5780 Rev. Laws, and it appears from the record that the indictment was returned by a grand jury duly and regularly impaneled at the February term, 1913, begun on the 3rd day of January, 1913. On the 18th day of February the homicide charged was committed and on the 21st day of February, three days later, the grand jury returned this indictment. No request was made to the district judge by the defendants, or on their

behalf to bring them into court when the grand jury was specially charged as to this offense, and there is no showing made that any of said grand jurors were biased or prejudiced against this defendant.

"Neither the State, nor a person held to answer a charge for a public offense, can take advantage of any objection to the panel or to an individual grand juror unless it be by challenge, and before the grand jury is sworn, except that after the grand jury is sworn, and before the indictment is found, the court may, in its discretion, upon a good cause shown, receive and allow a challenge."

Section 5705 Rev. Laws.

In the case of *Fooshee v. State,* 3rd Okla. Cr. 666, 108 Pac. 554, it is held: "after a grand juror has been examined as to his qualifications, his answer under oath that he is qualified, has been received by the court and permitted to act, and after an indictment has been found, no possible issue can be made upon the competency or incompetency of such juror for the purpose of invalidating the indictment."

For the reasons stated the motion to set aside the indictment was very properly overruled.

Error is assigned upon the ruling of the court admitting the evidence of Lon Conley that Mart Lancaster insulted Miss Stewart at the dance. The record shows that said insult led to the final difficulty which occurred a few minutes after. It was clearly a part of the *res gestae,* and was explanatory of what immediately followed and so intimately connected with the killing as to form an integral part of the same transaction. This evidence was also competent to show the motive that led to the trouble out of which this killing arose; in fact, the main event could not have been clearly understood had not this evidence been admitted.

The next assignment is that the court erred in permitting the cross examination of Ida Eldridge to the effect that she and the defendant Crocket Daggs occupied the same bed on the night of the killing.

The question presented has been fully passed upon by this court in the case of *Castleberry* v. *The State,* 10th Okla. Cr. 504, 139 Pac. 132, where upon review of the authorities it is held:

"The state has the right, on cross-examination, to show the nature of the relations existing between the witness and the defendant, so far as their relations are such as would create a bias that might reasonably be supposed to effect the credibility of the witnesses, and this rule cannot be changed by the fact that such evidence would probably prejudice the defendant in the minds of the jury."

There are several other assignments of error, which we do not discuss, because we deem them destitute of merit.

The evidence shows that the crime in question was committed under circumstances indicating on the part of the perpetrator a depraved mind and a wanton and reckless disregard for human life. Upon the whole case, we are satisfied that the verdict was neither against the weight of evidence, nor against law; that the trial was conducted in substantial conformity with the law, and that the result was such as the jury might properly reach upon the evidence. The judgment of the District Court of Pontotoc county herein is therefore affirmed.

FURMAN and ARMSTRONG, JJ., concur.