STATE OF INDIANA *v.* McCOY.

[No. 13,682.  Filed May 15, 1929.]

*Arthur L. Gilliom,* Attorney-General, and *Virgil E. Whitaker,* Deputy Attorney-General, also *James M. Ogden,* Attorney-General, and *E. Burke Walker,* Deputy Attorney-General, for the State.

*William E. Stilwell, Daniel Ortmeyer, John W. Spencer, Jr., William D. Hardy, Edward A. Lorch, Philip Gould* and *Edwin C. Henning,* for appellee.

McMAHAN, P. J.—Appellee was indicted by the grand jury of Vanderburgh county for malconduct and misfeasance as judge of the city court of Evansville. He filed a plea in abatement, to which the State filed a demurrer. This demurrer was overruled, the State abided its exception and refused to plead further. From a judgment abating the prosecution the State appeals.

The plea in abatement alleges that the grand jury was impaneled September 13, 1927, at which time it was instructed by the judge as required by law, after which it entered upon its duties; that, after it had been engaged in its deliberations for more than a month, the judge called the grand jury to the court room, on October 24, 1927, and gave them the following instruction: "This afternoon, I want you to investigate the Lockhart murder and then tomorrow I want you to take up the investigation of the clerk's records and the sheriff's records to determine whether or not George Hubbard and Beulah Coffey were illegally released from jail. Tuesday I want you to investigate the city court records, and I don't want you to devote your time to anything but that investigation after you have taken it up. Devote your whole time to that matter"; that, after receiving this

instruction, the jury retired to their room and entered upon their duties of investigating the records of the city court and the acts and conduct of appellee as city judge, and were conducting such investigation and performing their duties in good faith, and had been for more than a week, when the judge again called the jury into the court room, and gave them another instruction, in which he told them that, because of rumors which he had heard to the effect that the court and the grand jury were going to whitewash appellee, he had called them in, and, after reminding them that they had taken an oath to uphold the law, and that they should be courageous in the performance of their duties, stated that he, the judge, had personally examined the records of appellee, and found scores of cases where appellee had remitted fines and suspended sentences in direct violation of the law; that if the grand jury had been diligent in its examination of the city court records, it would also have found that appellee had granted new trials when he had no right to do so, and that the penalty for the violation of such law was a fine of $1,000 and removal from office. The judge then gave the jury a lecture as to their moral responsibilities, telling them that they should be above suspicion and should have the same regard for their reputation that the judge had for his; that the law was so plain, he had thought the jury would not need instruction, although he was sure the prosecutor had instructed them, and proceeding, the court further said: "To wash my hands of things which might happen, I have called you back to tell you what the law is. I do not know what proof you have had, but I know that I have examined the court records of City Judge McCoy and I know what I found. I found where Judge McCoy had given a new trial on his own motion after thirty days. A man named Baggott had come before my court last February for the third time on a liquor charge and confessed that he had been

convicted in city court the second time and had been sentenced to serve sixty days in jail. The man said he only served forty-five days and I asked him how he happened to get out before the expiration of his sentence, and he said he didn't know." After telling the jury what he had learned in relation to the Baggott case, the judge told them that he had found similar cases in appellee's court and that he had instructed the prosecuting attorney to investigate. He then called the jury's attention to an article published in a local paper concerning the action of the judge and appellee's reply in the paper; that the law relating to the control of a court over its records and its right to grant new trials and remit fines was so plain that there should be no quibbling by any one of ordinary sense who was honest. And, after reading the section of the statute relating to the willful or corrupt malconduct or misfeasance of city officers, closed his instruction to the jury as follows: "When the city judge remits a fine, that is not an accident. He does it willfully, unless he was forced to it at the point of a gun, or unless he is crazy, or is a somnambulist. The law I read you is not a hard law to understand. It is the a-b-c of the law. I am not telling you this to influence you, but I don't want any buck-passing back and forth. You occupy a sacred trust. You should perform your duties under your oath. Men should be courageous and not shirk their duties, and now I want to read you again the oath each of you took as grand jurors. (Here the court read to the grand jury the oath taken by them.) In conclusion, I want you to take all the time you want, but I do urge you to hurry and do what you are going to do in this case and get it over." The last instruction so given to the grand jury covers nearly five pages of the printed brief, but we have set out enough of it to give a fair impression of the same.

As we understand the law, it is the duty of the judge,

and it is his right, to instruct the grand jury as to their duties and to give them such information as to the law as he may deem proper in relation to any charges and crimes that may come before the jury. §2125 Burns 1926, §95 of the Criminal Code.

The question of appellee's guilt is not involved in this appeal. The question we are called upon to consider relates to the regularity of the proceedings which resulted in the indictment. As was said by the court in *People* v. *Both* (1922), 118 Misc. Rep. 414, 193 N. Y. Supp. 591: "It is the right of one charged with a crime to have all proceedings leading to his indictment and conviction considered according to the well-settled principles of law and in accordance with the statute, so that the constitutional rights of the individual will not be invaded." In the case just cited, the grand jury had been investigating charges against the defendants, and upon the evidence submitted had failed to return an indictment. The presiding judge thereafter, but on the same day, called the grand jury before the court and instructed them, in part, as follows:

"I understand that there is some question in the minds of some of you as to some facts being brought out. There was an investigation in the John Doe proceedings before me as committing magistrate. During that investigation certain facts were brought out which, in my judgment, were sufficient to warrant the finding of an indictment. . . . In a proceeding that I had before me, one of the accused admitted that he had charged more to the county than he should have charged." It was there held that the charge of the court took from the jury the determination of the question whether a crime had been committed; that the legal effect of the instruction was to tell the jury as a matter of law that there was sufficient evidence against the defendants to warrant their indictment, and that the court had so far invaded

the province of the jury as to invalidate the indictment.

In *Fuller* v. *State* (1904), 85 Miss. 199, 37 So. 749, it was held improper for the judge, directly or indirectly, to designate a particular individual as making sales of intoxicants, and that if he did so, and such person was indicted for the crime, the indictment, on seasonable motion would be quashed.

And in *State* v. *Will* (1896), 97 Iowa 58, 65 N. W. 1010, an indictment was quashed because of the misconduct of the judge in instructing the grand jury, the court saying (page 61): "In so far as the charge directed the grand jury to investigate the matter of violation of the law, it was proper; but, in so far as it undertook to tell the jury that there was evidence warranting them in indicting parties for violation of this law, it was, in our judgment, improper and unwarranted. As to that, the grand jury alone were the judges, and the court had no right to invade their province in that respect."

For another case where an inflammatory instruction was given to a grand jury, see *Clair* v. *State* (1894), 40 Nebr. 534, 59 N. W. 118, 28 L. R. A. 367.

What right had the judge to inform the grand jury that he had heard rumors that the grand jury was going to "whitewash" appellee, and that he had personally examined the records of appellee as city judge and "found not one, two, ten or twenty cases where Judge McCoy had remitted fines and suspended sentences in direct violation of the statute, . . . but scores of them," and then telling the jury if it were diligent, "it would have found that appellee had granted new trials in violation of the statute," the penalty for which was a fine and removal from office? Had the judge any right to admonish the jury and tell them what regard they should have for their reputation? We will not extend this opinion by calling attention to the many statements of facts which the judge told the jury he had

learned and about which he informed the jury. We have no doubt, but that the court, by its instructions, impressed the grand jurors that he had investigated the facts and that he had formed an opinion as to the guilt of appellee, and that if the grand jury did its duty, it would return an indictment against appellee. The influence of the judge of the circuit court is such that we can say, as a matter of common knowledge, that jurors in many instances regard a suggestion by him as a command. As was said in *People* v. *Both, supra:* "The greatest care is required ordinarily to conceal from the jurors the opinion entertained by a trial judge on questions of fact, lest such an indication might have undue influence upon the jurors."

The Supreme Court of Mississippi, in discussing the subject, said: "Every person accused of crime has the right to have his case investigated and passed upon by a fair and impartial grand jury, whose ears have never heard a suggestion of guilt from the presiding officer, and whose minds have not been prejudiced by any statement showing the opinion of the trial judge. If the grand jury is to be kept free, as has been repeatedly announced by this court, from all undue outside influences, of what grave importance is it that undue influence should not proceed from the very officers to whom they must look for guidance and whose decision and judgment they must take as the law! And the general observations made upon this line apply with equal force to all utterances of presiding judges which, during the progress of a trial, might inure to the prejudice of defendants accused of crime. 'Four things belong to a judge: to hear courteously, to answer wisely, to consider soberly, to decide impartially.' This rule of conduct embodies the wisdom of the ages, and has never been improved upon during all the lapse of time since enunciated by the ancient sage and philosopher. It is the duty of the trial judge

to do all in his power to conserve the public interest, to see that the peace and quiet of the country are preserved, and to administer the law with firmness, yet with unswerving justice and impartiality. In the instant case we are constrained to hold that each of the assignments of error based upon the language of the trial judge is well taken. His charge to the grand jury, in which, by name, he called attention to a particular individual, and the connection in which the language was used, must necessarily have grievously biased the minds of the grand jurors against the person so invidiously singled out." *Fuller* v. *State, supra.*

We have no doubt but that the trial judge, by his zeal to see that the laws were enforced, was led astray, with no intention of depriving appellee of any legal right, but the rights invaded are so vital in their nature that appellee was practically denied his constitutional right of a hearing before a fair and impartial jury.

Judgment affirmed.