# RALPH H. BLAKE v. STATE.

No. A-8348.   Sept. 9, 1932.
(14 Pac. [2d] 240.)

Streeter Speakman, W. V. Pryor, C. B. Rockwood, Owen & Looney, Clara C. Gore, Paul N. Lindsey, and Clyde J. Watts, for plaintiff in error.

J. Berry King, Atty. Gen., Sebe Christian, Co. Atty., and James Hepburn, Sp. Counsel, for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Creek county of destroying public records and was sentenced to serve a term of one year in the state penitentiary and to pay a fine of $1,000.

The prosecution is under section 1624, Comp. St. 1921. It is alleged defendant destroyed:

"* * * a record or paper known as 'A Sales Record,' or 'A Tax Sale Record,' or 'List of Delinquent Taxes,' said record being known and identified by all three of the above descriptive names. * * *"

A brief statement of the background of this case is: Defendant was county treasurer of Creek county; his office had been investigated by the state examiner and inspector and a report made; a question of official misconduct in the sale or resale of real estate for delinquent taxes had arisen, and the Governor under the provisions of section 6, Comp. St. 1921, named James Hepburn, a member of the bar, to appear for the state. A grand jury was called, the special officer named with the county attorney conducted the grand jury examination, which returned the indictment under which this conviction was had.

Several assignments of error are argued but the first is decisive. It is that the court erred in overruling the motion to set aside the indictment. Considering this contention the record discloses that at the time the grand jury was first impaneled the court in his charge several

times referred to defendant by name as the object of the jury's investigation. After it was impaneled and had been in session for some time, it appeared before the court, and the special counsel in the presence of the jury in substance informed the court that one member was interrupting the investigation; that the proceedings were getting "too rotten" for him; that the state had offered sufficient evidence to warrant an indictment; the grand jury had voted but failed to indict due to the action of the particular juror. He repeatedly asked the court to examine the clerk under oath and ascertain who voted against the indictment and asked that the juror named be discharged and the grand jury be reimpaneled, in part saying:

"If the court please, this morning the prosecuting attorneys presented to the grand jury an indictment, properly prepared. The evidence upon that indictment was—if I am not correct, I want the foreman or any member of the grand jury to correct me—against an individual charging him with a certain crime. The evidence was, two witnesses were sworn and testified that he told them that he committed the crime. A third witness testified in substance that she saw him commit the crime, and begged him not to do it. In addition to that, on that evidence the indictment was presented last night, but the grand jury informed us that they would vote upon it in the morning. They wanted further testimony this morning, and we introduced further testimony. We introduced an affidavit, the original sworn affidavit, sworn to by this man, swearing that he had committed this crime. They then voted on that indictment and failed to indict. * * * The state of Oklahoma, at this time, through the special counsel for the state, requests the court to privately examine the clerk and ascertain who voted against the indictment, under the evidence and the sworn affidavit of the party himself. * * * I am asking the court to discharge this gentleman wearing glasses, and to examine the

clerk under oath privately, to ascertain who cast the four votes against the indictment. * * *"

The court then asked if any other member of the grand jury was obstructing the proceedings. Special counsel answered that as a whole the jury was honestly and fairly performing its duty. The juror named was then permitted to make a statement, following which the court discharged him and ordered additional jurors drawn. When the additional jurors appeared in court, they were examined as to qualifications and opportunity for challenge given. Special counsel for the state challenged two additional members of the first panel and who were in the array to be reimpaneled, in part saying:

"* * * We challenge those two jurors for the reason that they were members of the grand jury and that they voted against returning indictments where there was evidence before the grand jury, the sworn affidavit of the party charged, that he committed the crime. The witnesses have not been challenged. Also two witnesses who testified before the grand jury that he told them, the party being investigated told them that he committed the crime. And, in the face of that evidence, these two gentlemen voted against returning the indictment; and we say it comes under that right to challenge under that last clause your honor read. * * * Now, your honor, if those gentlemen, under their oath, say they did vote to return that indictment, of course, I will withdraw my objection, but they did vote not to return it, in the face of that testimony. * * * We make the challenge on the last ground that your honor read, the objection that we are making might also come in under the other sub-division, on the ground of insanity. * * * I insist upon the challenge of these two gentlemen being sustained. * * *"

The court then asked the two jurors if they desired to make a statement and each stated they did not. The court then sustained the challenge to the two jurors, added

three of the names drawn to the former panel, reimpaneled them, and the investigation proceeded. Under this state of the record counsel for defendant insist the indictment was procured by coercion.

The contention made under the first proposition is not to any irregularity in drawing or impaneling the jury, nor to the qualifications of any juror. The rule is that statutes for the drawing or impaneling a grand jury or relating to the qualifications of the individual juror are directory and a substantial compliance is sufficient. Viers v. State, 10 Okla. Cr. 28, 134 Pac. 80; Herndon v. State, 16 Okla. Cr. 586, 185 Pac. 701. Irregularities in drawing or impaneling the grand jury or lack of competency of the individual juror must be challenged before the jury is sworn. Section 2522, Comp. St. 1921; Fooshee v. State, 3 Okla. Cr. 666, 108 Pac. 554; Daggs v. State, 12 Okla. Cr. 289, 155 Pac. 489. The question here goes to the freedom of the jury to investigate and to indict or not as it may find the facts from the evidence presented.

The origin of the grand jury system is lost in obscurity. Some have thought the institution existed among the early Athenians; others that it is of Norman origin, brought to England by the Normans. Still others claim its origin as Anglo Saxon. The institution came to this country as a part of the common law. The Federal Constitution as adopted contained no guaranty of indictment by a grand jury, but this was remedied by the fifth article of the Amendments. · This provision applies only to offenses against the United States and does not require that the states shall proceed by indictment for offenses against state laws. Various states of the Union have practically abolished the grand jury. As will be seen from an examination of our Constitution, sections

17 and 18, art. 2, all prosecutions may be begun and carried on without the intervention of a grand jury. Generally speaking, under modern conditions, a grand jury is a superfluous piece of legal machinery. Where prosecuting officers are willing to act there is rarely any reason why this cumbersome proceeding should be invoked. They have the power without a grand jury to make inquisition, to examine witnesses, and to ascertain facts upon which to base a prosecution. It is wise to provide, as has been done in this state, that a grand jury may be called where prosecuting officers will not act but as a part of judicial procedure it is antiquated and well-nigh useless, as is well illustrated by the instant case. Our constitutional provisions in reference to the grand jury are sections 17 and 18, art. 2; the statutory provisions are sections 2513 to 2533, 2551, 3517, Comp. St. 1921.

Section 2597, Comp. St. 1921, provides the grounds for setting aside an indictment. It is not by its terms exclusive of any other ground going to the validity of the indictment. It has generally been said that the grand jury should not be interfered with or its action influenced by outsiders or by public officers. 12 R. C. L. pp. 1040-1042; 28 C. J. p. 802, § 96; The Grand Jury, Edwards 1906, pp. 163, 164. It is held in substance that the coercion of the grand jury into returning an indictment is a ground to set aside. The following are enlightening cases: Coleman v. State, 6 Okla. Cr. 252, 118 Pac. 594, 605; Com. v. Bannon, 97 Mass. 214; Blau v. State, 82 Miss. 514, 34 So. 153, 155; Fuller v. State, 85 Miss. 199, 37 So. 749, 751; Clair v. State, 40 Neb. 534, 59 N. W. 118, 28 L. R. A. 367; State v. Will, 97 Iowa, 58, 65 N. W. 1010; People v. Both et al., 118 Misc. 414, 193 N. Y. S. 591; State v. McCoy, 89 Ind. App. 330, 166 N. E. 547.

In the Coleman Case, supra, it is said:

"* * * The powers of the grand jury are plenary, and, after the grand jury has been duly organized, the largest part of their legitimate functions are performed by them as a separate and independent body, acting by themselves and separate and apart from the court, and in their deliberations or actions they are not subject to the control of the court or directions from the court other than that they may receive in the charge of the court before they proceed to enter upon their duties or by instructions subsequently given them in open court. They can properly exercise their functions without the presence of the court. In the exercise of their powers, they cannot be interfered with or controlled by the court, but it is their duty to deliberate and to act by themselves. We are supported in these views by the following authorities: * * *"

In 28 C. J. 786, it is said:

"* * * However, it has been held to be a manifest abuse of discretion for the court in its charge to the grand jury to express an opinion as to the guilt or innocence of a person accused of crime to be investigated, to express an opinion that there is evidence warranting the indictment of parties for violation of particular laws, or specifically to direct the attention of the grand jury to any named person as a subject for investigation. * * *"

In the Blau Case, supra, the court said:

" * * * That in certain respects the grand jury is to be considered as enjoying a distinct autonomy; that, after they have been organized and charged, part of their legal function is to be performed by them as a separate and independent body, acting by themselves, and apart from the court. The court is neither the keeper of their conscience nor can control in finding facts, but in many other respects they are, of course, subject to the control of the court, and dependent upon it for the execution of powers necessary to the prosecution of their inquiries. The an-

cient practice of forcing grand juries, by fines and imprisonment, to find indictments against their convictions, is now among civilized nations regarded as one of the barbarities of the common law, and to attempt anything of the kind now would be criminal. The grand jury may at all reasonable times during the discharge of their duties appeal either to the court or to the prosecuting attorney for advice, but this advice must be restricted to matter of law, sufficiency of service, and proper dispatch of the public business. Neither the court nor this officer can say to the grand jury that the facts, as shown by the evidence, are sufficient to authorize them to find a bill. As upon a trial by a petit jury the judge cannot say that they should return a verdict of guilty, so here the court cannot advise them upon the question of a true bill or not a true bill. * * *"

In the Fuller Case, supra, the court said:

"* * * In the instant case we are constrained to hold that each of the assignments of error based upon the language of the trial judge is well taken. His charge to the grand jury, in which, by name, he called attention to a particular individual, and the connection in which the language was used, must necessarily have grievously biased the minds of the grand jurors against the person so invidiously singled out. * * *"

It is obvious that the instruction of the court singling out and naming defendant as the particular person to be investigated and the proceedings in open court in the presence of the grand jury wherein the prosecuting officers criticized and publicly rebuked certain of the jurors for their failure to have voted an indictment and asking that their vote be disclosed and that they be discharged on that ground alone, is coercion and is a violation of section 2546, Comp. St. 1921, which is:

"A grand juror cannot be questioned for anything he may say, or any vote he may give in the grand jury relative to a matter legally pending before the jury, ex-

cept for a perjury of which he may have been guilty in making an accusation or giving testimony to his fellow jurors."

Grand jurors, not familiar with court procedure, called to perform a service entirely foreign to any previous experience and under the public eye, seeing their fellow jurors criticized and discharged, would be more than human if they were not intimidated. We are constrained to hold that this proceeding invalidated the action of the grand jury and that the court erred in overruling the motion to set aside the indictment.

Other questions are raised, but it is not necessary to pass on them at this time since the foregoing disposes of this case.

The case is reversed.

DAVENPORT, P. J., and CHAPPELL, ., concur.