COKER *v.* STATE.

(In Banc. Nov. 11, 1946.)

[27 So. (2d) 898. No. 36229.]

536

Clay B. Tucker, of Woodville, and Gordon & Gordon, of Liberty, for appellant.

Greek L. Rice, Attorney General, by R. O. Arrington, Assistant Attorney General, for appellee.

Argued orally by **Clay B. Tucker**, for appellant, and by **R. O. Arrington**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellant was convicted at a special term of Circuit Court in Amite County of a violation of the Age of Consent Statute, Sec. 2359, Code 1942. The offense is charged to have occurred on March 23, 1946, the alleged victim being at that time about 15 years of age. A term of court had been held beginning on the third Monday in February, or approximately a month preceding the date mentioned.

On April 3, 1946, being about 10 days after the alleged offense, the circuit judge called a special term of the circuit court of the county, the order containing the recital that the judge had been "reliably informed and advised that some serious violations of the law have recently occurred in the county, crimes of that serious nature that in the judgment of county officials and many other reputable citizens of the county think and believe should be investigated as speedily and promptly as possible," and the order fixed the date for the convening of the special term for the first Monday, the 6th day of May 1946.

On the day last mentioned, a grand jury and the petit juries were empanelled, and during the day the grand jury returned one indictment,—the indictment against appellant. The grand jury reported at the same time that it had no further business, and was discharged, and this on

the first day of the term. On the same day, appellant was arraigned, and upon a plea of not guilty, the case was set for Thursday, May 9, 1946, and the court thereupon recessed until the date last mentioned.

On Thursday, May 9, 1946, the court reconvened pursuant to its recess, and appellant was put on trial, the trial was concluded, the verdict was received, a motion for a new trial was overruled, the sentence was pronounced, the judgment was entered, and the court adjourned sine die, all on this same day, to wit, on Thursday, May 9, 1946, so that all that was done at the entire special term was to indict and convict this one appellant.

It will be observed by a reading of the cited statute that the punishment is fixed by the jury "either by a fine not exceeding five hundred dollars, or by imprisonment in the county jail not longer than six months, or by both such fine and imprisonment or by imprisonment in the penitentiary not exceeding five years." There is perhaps no other criminal offense which may be attended by such a variety of circumstances as this one, and none about which such a diversity of opinion is entertained by different persons. It is a wise and a just provision that in such a case the sentence shall be the result of the combined consideration of not less than all the 12 men who try the case as jurors, and there could be nothing more desirable in point of fairness in the trial than that these 12 men in such a case should be left completely free to act upon nothing but the facts of the particular case, and with no advice or impression from any source except by their consultations with each other within the four walls of the jury room.

Upon such a deliberate and unhurried consideration, it is readily to be seen that the jury would be at liberty to conclude that what was done was no more than a minor misdemeanor to be punished by a small fine, without even a day in jail, on up to a felony with a sentence of as much as five years in the penitentiary,—but there are a score or more of felonies which carry a sentence as high or higher than five years, and if a special term of court should be

called for each of such felonies, there are many counties where the court would be in special session almost continuously.

We can readily conceive of a set of facts so flagrantly criminal, and so repulsive in detail, in such cases that none would challenge the propriety of a penitentiary sentence, but even so the limit on such a sentence is as stated, five years, and the scale is thence downward even to a small fine. Looking to these extremes, and to what would be a proper placing of the present case between the extremes mentioned, we are of the opinion, looking to the entire record and particularly to the testimony of the prosecuting witness herself, that had a sound and impartial jury been empanelled to try the case in the regular course of judicial business, and in its regular turn in the judicial mill along with the average run of other cases, there would have been no penitentiary sentence pronounced by the jury as was done. And we regard it as fairly a certainty that had the circuit judge known the facts as this record shows them, he would never have called a special term to indict and try this one accused person. The conclusion must follow that the officers and many other reputable citizens referred to by the judge in his order had been imposed upon by persons having purposes or interests other than the furtherance of justice, and that thus the judge himself was imposed upon, and now the obligation is upon us to consider whether the ultimate victim of the imposition has been the appellant.

Had the judge in his charge to the grand jury, on the convening of this special term, pointed out that he had called the term to indict and try appellant, calling his name and stating the general nature of his reported offense, and had he, in qualifying the petit jurors for the trial of the case, admonished them that he looked upon the offense for which appellant was being put on trial as such a serious charge that he regarded it as requiring a special term of court, none would deny, as we take it, that this would constitute reversible error, under such cases as Ful-

ler v. State, 85 Miss. 199, 37 So. 749, wherein the principles applicable to such a situation are clearly laid down. We may here adopt a statement contained in an opinion in another case decided this day that the solution of jury issues must be so safeguarded that verdicts may be confidently regarded as the product of the law and the evidence uninfluenced by any extraneous pressure.

But, what has been pointed to in the foregoing paragraph would be words, while here we have the actions of the trial judge, open to the eyes of every juror—and particularly here we are concerned with the trial jurors. They saw that this particular charge was the only one before the grand jury, which, upon its prompt return of the indictment, was immediately discharged as having no further business. The date for the trial was immediately set for the following Thursday, and court at once recessed to that date, and no other case was tried. How more impressively could the trial judge have placed before the trial jury that which would engender in them the belief that the judge entertained the conviction that here is an offense so serious, so heinous in character, that the whole power of the county should, without delay, be turned upon it, and what chance did appellant have under such circumstances to get a fine or a jail sentence returned by this jury? The answer is that he didn't have any chance at all, although, as we have already said, the ends of justice would have been well met in this case by a misdemeanant's sentence, looking to the actual facts as shown by this record, whereas, what the jury is bound to have felt was that it was expected of them by the court that they return a verdict which would be large enough to bear relation to the largeness of the unusual effort expended in bringing it about. The actions of the court had magnified the gravity of the offense as against the actual facts as shown by this record; from which it follows that it cannot be asserted within the bounds of common sense as enlightened by the experience of those who have been long ob-

servant of such matters that all this did not influence the jury to magnify it also in the terms of their sentence.

The attention of the trial court to the considerations mentioned was challenged in the motion for a new trial, which, in view of the peculiarities of the situation, was available to appellant as a procedural means to raise the question. Here the trial by the jury was of two issues: (1) was the accused guilty of the charge; and (2) what is the proper punishment. It is immaterial that the trial was fair upon the first issue, if unfair upon the second. If unfair on either issue, the motion for a new trial must be sustained. Fair trials are the prime objects of the procedural law, as we have stated, in one form or another in a hundred cases, and as we do not think the trial in this case was fair on the second issue, the sentence and judgment is reversed and the cause remanded that such a trial may be afforded. Reversed and Remanded.

**Sydney Smith, C. J.,** did not participate in this decision.