## STATE OF IOWA v. F. J. WILL, Appellant.

**Grand Jury:** COURT AND JURY. While Code, 4270, makes it the duty of the court to specially charge the grand jury as to the laws for the suppression of intemperance, and while it may, if the grand jury asks to be discharged without having found any indictments for violation of the liquor laws, direct them to further investigate violations of that law, it is error to tell them that there is abundant evidence to warrant them in returning indictments.

**SAME:** *Affidavits.* The affidavit of a grand juror may be received to show that the judge of the court at his own instance, in violation of Iowa Code, section 4337, sub-division 42, visited the grand jury while in session and directed it to indict a certain party subsequently indicted for such crime, although section 4284 requires the grand jury to keep secret its proceeding and the testimony given before it.

**SAME:** *Practice.* Under Iowa Code, section 4337, sub-division 4 providing that an indictment shall be set aside when any person, other than the grand jurors, was present during the investigation of the charge, except as permitted by law, an indictment will be set aside where the presiding judge was in the grand jury room with the grand jury during their deliberations and urged and directed them to find the indictment.

*Appeal from Wright District Court.*—HON. B. P. BIRD-SALL, Judge.

TUESDAY, JANUARY 28, 1896.

THE defendant was indicted for and convicted of a liquor nuisance, was sentenced to pay a fine and appeals.—*Reversed.*

*D. C. Filkins* and *Nagle & Nagle* for appellant.

*Milton Remley,* attorney general, and *Jesse A. Miller* for the state.

NOTE.—What constitutes improper influences of or interferences with the grand jury is considered in an extensive note to *Clair v. State* (Neb.) 28 L. R. A. 367.

KINNE, J.—I.   The indictment charges the defendant with the crime of nuisance, and is in the usual form.   Defendant moved to set it aside for the following reasons:   Because it was found upon the compulsory order and direction of the judge of the district court, that after the grand jury had reported that they had no further business, and asked to be discharged, the court ordered them to return to their jury room; and that the judge of said court afterwards went to said jury room, without being requested so to do by the grand jury, and directed said grand jury to find said indictment; and the same was thus found under the duress and compulsion of the court, and contrary to the opinion and wishes of said grand jury.   The judge, Hon. N. B. Hyatt, when the grand jury asked to be discharged, said to them:   "I am compelled to say to you, from what I have heard, which I must believe to be true, as relates to the condition of things in your county, that you have not discharged your duty,—that there is other business that you ought to attend to.   I cannot discharge you, as grand jurors, until you have made some effort to bring the persons who are guilty of violation of the law for the suppression of intemperance to justice.   I charge you to return again to your grand jury room, and make an effort to procure witnesses and prosecute the parties who have been guilty of violating that law in this county.   I feel sure that abundance of witnesses can be obtained and abundant evidence procured that will warrant you in returning indictments against the various parties in this county.   I cannot believe that you, as intelligent and good citizens of this county, can justify yourselves in going to your homes without making an attempt to bring the guilty parties to justice.   You will retire, and proceed to discharge your duties in accordance with the instruction of the court."

The motion to set aside the indictment was overruled, and this action of the court is assigned as error. The law provides that, when the grand jury is impaneled and sworn, it may be charged by the court; that in doing so the court shall give them such information as it may deem proper as to the nature of their duties, and any charges for public offenses returned to the court, or likely to come before the grand jury. It is further provided, "And it is hereby made the duty of the court to specially give in charge to the grand jury, the provisions of the law  *  *  *  providing for the suppression of intemperance." Code, section 4270. Section 4271 provides that the court shall discharge the grand jury on the completion of its business. It is clear that whether or not the grand jury has completed its work is a matter not entirely to be determined by that body, but its decision in that respect is always subject to the judgment of the court. The court may at any time during the sitting of the grand jury, and before its final discharge, give that body further charges as to matters arising since the first charge was given, and as to matters concerning which they should be charged, and which may have been overlooked by the court in giving the original charge; and it may be within the province of the court, in a proper case, to call the attention of the grand jury generally to its duty with reference to the laws touching the suppression of intemperance, even though that was done when the original charge was given. This is especially true if it appears to the court that in that respect the grand jury has not investigated to ascertain whether or not such law has been violated. An examination of the language used by the court (Judge N. B. Hyatt) shows that it did not call the attention of the grand jury to the supposed violation of the law by any particular person. From the tenor of the court's remarks it would seem that he must have

thought that the grand jury had given the matter of the violation of this law no attention whatever. Under such circumstances, it was within his province, if not his duty, under the provisions of the law, to call the attention of the grand jury to the necessity for investigating supposed violations of this law. The real question is, did the court, in what he said, exceed the proper limits? The utmost effect of the language used was to tell the jury that the court believed they could find evidence which would warrant them in returning indictments for the violation of the liquor laws. In so far as the charge directed the grand jury to investigate the matter of violation of the law, it was proper; but, in so far as it undertook to tell the jury that there was evidence warranting them in indicting parties for violation of this law, it was, in our judgment, improper and unwarranted. As to that, the grand jury alone were the judges, and the court had no right to invade their province in that respect. *State v. Turlington*, 102 Mo. 642 (15 S. W. Rep. 141); 2 Hale, P. C. 161; *Clair v. State* (Neb.) (59 N. W. Rep. 120).

II. It appears from the affidavits of three of the grand jurors, which are not disputed, that the presiding judge, Hyatt, went into the room of the grand jury, and while they were in session, and personally urged the indictment of parties for violating the liquor laws. One grand juror swears that the judge said to them "that he knew there was evidence enough to indict Smallpage Bros. and F. J. Will [the defendant herein], and said, 'You have got to indict them.'" Another swears that the judge told them, "There is not a drug store in Wright county that was not violating the law, and liable to be indicted," that he gave them "positive orders to indict all such places." Another swears that he told them "that the permits themselves were sufficient evidence on which to base

an indictment." All of these grand jurors swear that the indictment in this case was found, not of their own free will and upon their own judgment, but upon the express orders of the judge, given as heretofore stated. For the reasons heretofore stated, defendant moved to set aside the indictment. The motion was overruled, an exception taken, and error properly assigned.

The attorney general insists that these affidavits are not competent to impeach the record, proceedings, or findings of the grand jury; that, when the indictment is returned and filed, it becomes a record (Code, section 4294), which cannot thus be assailed or impeached. He also insists that, upon a motion to set aside an indictment, the character of the evidence upon which the grand jury acted cannot be inquired into. We proceed to a consideration of the cases relied upon by the attorney general: In *State v. Gibbs*, 39 Iowa, 321, it was held that the fact that an indictment was presented and filed after the adjournment of court, and that the grand jurors did not assent to the finding of an indictment, cannot be shown by affidavits of grand jurors in support of a motion to set the indictment aside. In *State v. Davis*, 41 Iowa, 315, it was proposed to prove by a grand juror that the grand jury intended to, and did in fact, vote only to find an indictment for manslaughter, and refused to find an indictment for murder, and such evidence was held properly rejected. The court said: "After an indictment has been presented to the court by the grand jury, filed, and become a matter of record, it is not competent for those who found the indictment to testify that they did not vote to find the bill, or to explain how they did vote, or what they intended to find." *State v. Little*, 42 Iowa, 52, holds that, when the minutes returned with an indictment are filed, they cannot be contradicted by affidavits to the effect that they do

not contain all the material evidence given before the grand jury. In *State v. Fowler*, 52 Iowa, 104 (2 N. W. Rep. 983), it was held that upon a motion to set aside an indictment the court could not inquire into the character of the evidence upon which the grand jury acted. In *State v. Smith*, 74 Iowa, 584 (38 N. W. Rep. 492), it was held that an indictment could not be assailed by motion on the ground that it was found upon incompetent or insufficient testimony. We do not think that any of the cited cases are controlling as to the question now before us. One of the statutory grounds of a motion to set aside an indictment is: "(4) When any person, other than the grand jurors, was present before the grand jury when the question was taken upon the finding of the indictment, or when any person, other than the grand jurors, was present before the grand jury during the investigation of the charge, except as required or permitted by law." Code, section 4337, subd. 4. Now, the cited cases go to the extent of holding that a grand juror's affidavit cannot be received to show that he did not assent to the finding of an indictment, or that he intended to, or in fact did, vote for an offense other than that stated in the indictment, or to explain his vote, or to contradict the minutes of the grand jury, or as to the character of the evidence upon which the indictment was found, or that it was found upon insufficient or incompetent testimony. The question we have to deal with is, may the affidavit of a grand juror be received to show that the judge of the court, at his own instance, visited the grand jury, while in session and deliberating upon a case, and insisted and directed that that body should indict a party for a certain crime, against whom an indictment was thereafter returned for that crime, and may such affidavit be received to show that the indictment was found under such express direction of the court? It is said that

our statute provides that the members of the grand jury shall keep secret "the proceedings of that body and the testimony given before them except as hereinafter required." Code, section 4284. Manifestly, it was not the intent of this section to require the grand jury to preserve secret the fact that one not authorized by law had been present when they were considering the question of finding an indictment against a party. Such a construction of the statute would tend to encourage the very acts which it expressly prohibits, viz., the presence and influence of unauthorized persons while a charge is under investigation. In *State v. Kimball*, 29 Iowa, 267, it was held that the question of the presence of an unauthorized person in the grand jury room while witnesses were being examined, and the grand jury were deliberating upon the defendant's case, must be raised by motion to set aside the indictment. In *Ex parte Schmidt*, 71 Cal. 212 (12 Pac. Rep. 55), it was held that a member of the grand jury might be examined as to whether any person was examined as a witness before the grand jury whose name was not indorsed on the indictment. The court said: "By section 925 [Pen. Code,] no person, except the district attorney and witness under examination, are permittted to be present at the sessions of the grand jury. If, therefore, neither the members of the grand jury nor the district attorney could be called upon to state whether any witnesses were examined other than those whose names have been inserted or indorsed, a barren right to move to dismiss is given, without the power to ascertain whether or not the statute has been complied with." It may be that these cases go further than our own, in some respects; but they recognize the necessity of permitting the establishment of certain facts by the testimony of grand jurors, without which the right of a defendant to move to quash an

indictment because of the presence of unauthorized persons in the grand jury room during its deliberations, would be a barren right. In *State v. Miller*, 95 Iowa, 368 (64 N. W. Rep. 288), after referring to the provisions of the statute it was said: "These provisions authorize the practice, common in criminal cases, of showing occurrences in the jury room by affidavits; and it was competent, under them, to show by that means the part which the clerk of the grand jury took in the examination of witnesses." The affidavit in that case was made by a member of the grand jury. If, in a case like that, an affidavit of a grand juror is receivable to show whether or not the clerk violated the duty cast upon him by law, we can see no good reason why such affidavits are not competent to show that the judge of the court—a person not authorized by statute—visited the jury room during their deliberations, and directed the jury what action they should take with reference to indicting the defendant. We hold, then, that the affidavits of the jurors were competent to show the facts recited in them.

Now, as we have seen, under the law, the presiding judge had no right whatever to be in the jury room during their deliberations, he not having been there in the capacity of a witness. The fact that he was there under the circumstances disclosed, is, by law, made a ground for setting aside the indictment. Add to that the fact, undisputed, that he directed the jury to indict this defendant, and we have a case where not only the province of the grand jury was improperly invaded, but the discretion and judgment wisely vested by law in that body is swept away by the positive direction of the judge of the court, and the will of one man is substituted for and in place of the judgment of the grand jury. Under the circumstances disclosed in this case, the defendant was deprived of the right of having his case examined and

passed upon by an unprejudiced grand jury, uninflu-
enced by the presence of unauthorized persons while
that body was deliberating thereon.   In *Clair v. State*,
59 N. W. Rep. (Neb.) 120, in speaking of the invasion
of the province of the grand jury by the court, it is
said:  "We are constrained, after a careful considera-
tion of the subject, to regard the objections made to
the charge, so far as it assumes the commission of the
crime of bribery, as a merited criticism.   While doubt-
less intended as an admonition to the jurors with
respect to their duty, it cannot be construed other-
wise than an invasion of their province which amounts
to an abuse of discretion.   The finding or present-
ment of the grand jury of necessity includes two ele-
ments, to-wit:   First, the *corpus delicti;* and second,
a finding that the offense named was committed by
the person charged.   Both facts must be found by the
jury, and cannot be dictated by the judge."   The
above language was used with reference to the charge
of the court, and applies with much greater force to a
case like that at bar, when the judge goes to the
grand jury room and directs the finding of an indict-
ment.   Sir Matthew Hale said:   "The privilege of an
Englishman is that his life shall not be drawn in
danger without due presentment or indictment, and
this would be but a slender screen or safeguard if
every justice of the peace or commissioner of oyer
and terminer or gaol delivery may make the grand
jury present what he pleases, or otherwise fine them,"
2 Hale, P. C. 161.   But we need not dwell further
upon this matter.   To countenance such a proceeding
would be to strike a fatal blow to the grand jury sys-
tem, would effectually deprive that body of the exclu-
sive discretion which the law has reposed in them,
and instead of leaving them an independent body,
charged with the investigation of crime, and the due
presentment of those who, from the evidence before

them, they should deem to be guilty parties, would make them the mere servants of the presiding judge, to register his will regardless of their own judgment. Under no view of the case can the action of the judge be sustained. The motion to quash the indictment should have been sustained. Under this view of the case, it would be neither profitable nor proper to consider the alleged errors arising upon the trial.—REVERSED.