THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. BERNARD J. MANNEY, DEFENDANT-RESPONDENT.

IN THE MATTER OF THE APPLICATION OF THE STATE OF NEW JERSEY TO EXPUNGE AFFIDAVITS, ETC.

THE STATE OF NEW JERSEY, APPELLANT, v. ESTHER N. DILGER AND MICHAEL GREENGRASS, RESPONDENTS.

Argued May 20, 1957—Decided June 24, 1957.

572

Mr. *Archibald Kreiger,* Deputy Attorney-General, argued the cause for appellant (*Mr. Charles S. Joelson,* Deputy Attorney-General, Acting Passaic County Prosecutor, attorney).

Mr. *Samuel Doan* argued the cause for defendant-respondent (*Mr. Charles C. Stalter,* attorney).

Mr. *Nicholas Martini* argued the cause for respondents Esther N. Dilger and Michael Greengrass.

The opinion of the court was delivered by

WACHENFELD, J.   Pursuant to *R. R.* 3:5–5(*b*)(7), the State appeals from a judgment of the Law Division, Passaic County, dismissing three indictments, handed down by the September 1955 term grand jury of Passaic County against Bernard J. Manney, on the ground that an unauthorized person was present in the grand jury room during its deliberative sessions.

The State also appeals from a denial of the State's motion to expunge the affidavits of two grand jurors and to hold them in contempt for violating the oath of secrecy which they took as grand jurors. We granted certification on our own motion prior to argument in the Appellate Division.

The indictments against Manney related to his allegedly illegal conduct as a member of the Board of Commissioners of the City of Passaic. They charged him with attempting to extort a total of $25,000 from three successful bidders on a new city hall project planned by Passaic. The means of extortion were alleged to be "by intimidating and threatening to use the power and color of his office to impede and prevent the acceptance, performance and fulfillment of the contract * * *." *N. J. S.* 2A:85–1 and 5.

Following his arraignment and plea of not guilty, Manney filed a notice of motion to dismiss the indictments upon the ground, amongst others, that they were improperly and illegally found and returned. The reasons asserted were: (1) during the deliberations of the grand jury relating to

his indictments an unauthorized person, Mrs. Vi Gormley, was present in the grand jury room contrary to law; (2) the indictments were found and returned upon extraneous matters not part of the evidence presented before the grand jury; (3) the indictments were found out of bias, malice and prejudice unsupported by evidence; and (4) the indictments were found as a result of malicious misstatements of fact circulated by certain members of the grand jury which were intended to arouse and inflame other members of the grand jury, such statements being unsupported by the evidence.

The motion was supported by affidavits of two members of the grand jury, Esther N. Dilger and Michael Greengrass. The Dilger affidavit recited Mrs. Gormley was present while the grand jury was deliberating as to whether or not Manney should be indicted, and was also present when the vote of the grand jury was taken and tabulated. It also charged that at the outset of the taking of testimony Mrs. Dilger was aware of intense feeling, bias, prejudice and antagonism against Manney on the part of three other grand jury members, Woolley, Richardson and Pfeil. The affidavit asserted these three expressed opinions that Manney was guilty of the alleged attempted extortion and devoted themselves to persuading other members of the grand jury that indictments should be returned irrespective of the evidence presented.

It was said in the affidavit that Miss Woolley, prior to the voting of the indictments, stated Manney and Angelo Capuano were "both crooked," and Dilger alleged that she had voted for the indictments only because of the influence exerted upon her by Woolley.

The Greengrass affidavit was essentially similar. It stated Mrs. Gormley was present while testimony was being taken, while the jury deliberated on whether to hand down indictments, and when the vote was taken. It attested to the same bias, prejudice and antagonism on the part of Miss Woolley disclosed in the Dilger affidavit. Greengrass asserted that Miss Woolley tried to convince him these two men were guilty of the alleged attempted extortion. The affiant said

further that Manney and Capuano were indicted by an affirmative vote of 12 members of the grand jury, but he voted against the indictments since he did not believe the proof was sufficient to establish even a *prima facie* case. He also said that during the deliberations of the grand jury and prior to the return of the indictments, extraneous matters were considered which were not brought out by the evidence, but he asserted an inability to recall the exact nature of these extraneous matters.

Prior to the hearing of the defendant's motion the State moved to expunge the affidavits of Dilger and Greengrass "on the ground that the matters therein set forth constitute the disclosure of the proceedings of the September, 1955 term of the Grand Jury which are by law, secret and not to be publicly revealed except by order of the court." The State's motion also put Dilger and Greengrass on notice that it would make an application for the imposition of a penalty because of their disclosures of information regarded by law as secret.

The State submitted the affidavits of Woolley, Richardson and Pfeil in opposition to the motion to dismiss the indictments. In substance, these affidavits were identical. Each recalled the oath taken by the grand jurors upon the formation of the grand jury, set forth the obligation to maintain secrecy, disclosed the intention not to reveal any facts concerning the deliberations, opinions or the vote of any member of the grand jury, denied the charge of bias or prejudice, and averred conscientious performance of a public duty, relating that each affiant had had little or no contact with Manney either socially or as a public official.

An affidavit of Mrs. Gormley was also filed. She is a stenographer regularly employed in the office of the Prosecutor for Passaic County, but on December 14, 1955 Assignment Judge Robert H. Davidson, by order, designated her as an assistant to the clerk of the grand jury of Passaic County by reason of the disability of both the regular clerk and the regular assistant to the clerk of the grand jury. Her affidavit set forth the nature of her ordinary employment

and the fact of her special appointment by the assignment judge. Additionally, it stated:

"I was present at the time when the vote was taken on the indictments voted in the above matter. I recall that no deliberations took place on this case at that time. I was present when the vote was taken and as part of my duties I recorded the vote of each member of the Grand Jury present."

The court below decided that the presence of Mrs. Gormley, an unauthorized person, in the grand jury room during deliberations made it mandatory that the indictments be dismissed. *R. R.* 3 :3–6. As to the State's motion, the court determined the affidavits made by Dilger and Greengrass did not violate the rule of secrecy pertaining to grand jury proceedings in so far as they related to the presence of Mrs. Gormley. With reference to other statements contained therein, the trial court conceded they "might be considered as violating the secrecy of the proceedings within the Grand Jury," but determined the affiants could not be held in contempt because the State had not proceeded in accordance with the requirements of *R. R.* 4 :87, which prescribes the procedure to be utilized in an action for contempt. See *R. R.* 3 :8.

The following questions are presented on appeal and will be disposed of in this order: (1) do the affidavits submitted sufficiently establish the fact of the presence of Mrs. Gormley during the grand jury deliberations? (2) does a violation of *R. R.* 3 :3–6 vitiate the indictments *per se,* or must prejudice to the defendant be shown? (3) were the disclosures made by grand jurors Dilger and Greengrass a breach of their obligation to keep the proceedings secret? and (4) were the proceedings taken against these grand jurors to punish them sufficient under the circumstances?

I.

██ The indictments were filed December 16, 1955. The affidavits of the grand jurors constituting the proof in this case are dated July 20, 1956 and August 1, 1956, approxi-

mately seven and eight months, respectively, after the filing of the indictments. Both affidavits speak in general terms and without laying a proper foundation reach the conclusion that Mrs. Gormley, on the day the final deliberations took place, "was present in the Grand Jury Room while the Grand Jury * * * was deliberating on the problem of whether or not" to indict.

*R. R.* 3:3-6 provides the clerk shall, when requested by the grand jury, attend its sessions but shall not attend its deliberative sessions.

The validity of an indictment should not be determined upon the nice construction of language in affidavits which are negative on facts and circumstances but positive only on conclusions. The moving affidavits do not even disclose what the affiants deem to be "deliberative sessions," nor do they reveal a single detail other than the bare conclusion mentioned.

There is the question, too, of the remarkableness of their memory in being able to recall seven or eight months after the incident who was present and who was absent. Questions of fact so vital to the validity of the indictment should not turn upon affidavits alone, even though they be sufficient to justify the issuance of an order to show cause.

Before the indictments are vitiated, the affiants should be examined and cross-examined to reveal the full factual situation involved and to ascertain where the truth lies. The public interest requires a full inquiry, and the crucial question of the validity of these documents should not depend merely upon affidavits. Vital interference in this evasive and cursory fashion with the customary course of criminal justice has little to recommend its tolerance.

True, the same criticism can be made of the affidavit of Mrs. Gormley filed by the State. She swears she was present, as she had a right to be under the circumstances, when the vote was taken, but she "recall[s] that no deliberations took place on this case at that time." Her statement begs the issue. The burden of proof, however, was upon the applicant, and the weakness of the last-mentioned affidavit adds no

strength to the movant's cause. There was no shifting of the burden of proof, and the worth of Mrs. Gormley's testimony should also be tested by cross-examination.

There was not sufficient evidence to warrant the determination by the court below that the stenographer-assistant clerk was present during a "deliberative session." Its disposition in this regard is reversed.

## II.

The controversy centers upon the proper interpretation of *R. R.* 3:3–6 and a similar provision in a statute, *N. J. S.* 2A:73–5. The rule provides:

"Grand Jury, Who May Be Present

The prosecuting attorney, the witness under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer may be present while the grand jury is in session, *but no person other than the jurors, and the prosecuting attorney may be present while the grand jury is deliberating.* Upon request of the grand jury, the prosecuting attorney shall leave the jury room. The clerk shall, when requested by the grand jury, attend its sessions, *but shall not attend its deliberative sessions.*" (Emphasis supplied.)

Research shows that the rule, as originally drafted, prohibited all persons excepting the jurors from being present during deliberation and voting, while its first effective draft, *Rule* 2:4–5, September 15, 1948, permitted the prosecutor and the clerk to be present in both deliberative and voting sessions, with the proviso that they were to leave upon request.

*Rule* 2:4–5 was revised effective September 9, 1953 and thereby became *R. R.* 3:3–6, providing, as already stated, for the exclusion of the clerk from deliberative sessions. Its history shows the rule was revised to conform with *N. J. S.* 2A:73–5, which prohibits the clerk from attending deliberative sessions. The present rule was amended in June 1954, effective September 8, 1954. The only change made was to delete the words "or voting," which apparently was intended to emphasize that the clerk could be present while the grand jury was voting, but it is clear it was still

intended the clerk was not to be present during the deliberative sessions.

Our rule is patterned after *Rule* 6(*d*) of the *Federal Rules of Criminal Procedure,* effective March 21, 1946.

The court below primarily relied upon the federal decision of *United States v. Carper,* 116 *F. Supp.* 817 (*D. C. D. C.* 1953), where it was held the unauthorized presence of three U. S. deputy marshals in the grand jury room during the taking of testimony invalidated the indictment involved without the necessity for a demonstration of prejudice. To hold otherwise, the court reasoned, would deprive the federal rule of meaning.

The first federal statute, *R. S.* § 1025 (1872), in this area stated that no indictment should be dismissed for a defect in form only which did not tend to prejudice the defendant. There was no attempt to specifically limit the persons who could attend federal grand jury sessions.

Following the enactment of *R. S.* § 1025 (1872) the question arose in the federal courts as to whether it was permissible to employ a stenographer to transcribe testimony given before the grand jury. Some of the cases held that under modern conditions a stenographer should be regarded as an authorized person who was performing an essential function, redounding to the benefit of the defendant as well as to the state. Nevertheless, a conflict over this issue developed among the federal judicial circuits. *E. g.,* compare *Wilkes v. U. S.,* 291 *F.* 988 (6 *Cir.* 1923), *certiorari* denied 263 *U. S.* 719, 44 *S. Ct.* 181, 68 *L. Ed.* 523 (1924), and *Wilson v. U. S.,* 229 *F.* 344 (2 *Cir.* 1916), with *Latham v. U. S.,* 226 *F.* 420, *L. R. A.* 1916D, 1118 (5 *Cir.* 1915). As a result, the subterfuge of appointing a stenographer as a Special Assistant United States Attorney under 5 *U. S. C. A.,* § 310 was not infrequently used. *E. g., United States v. Amazon Industrial Chemical Corp.,* 55 *F.* 2d 254 (*D. C. Md.* 1931); *Hale v. U. S.,* 25 *F.* 2d 430 (8 *Cir.* 1928).

The prevailing uncertainty concerning the stenographer's status was laid to rest by a Congressional amendment to *R. S.* § 1025 (1872), which became effective on May 18,

1933. 48 *Stat.* 58; 18 *U. S. C. A.,* former § 556. The original statute was retained, but it was provided additionally that no indictment should be deemed insufficient by reason of the presence of clerks or stenographers, employed to assist the United States Attorney, during the taking of testimony before the grand jury. Such personnel were to be regarded as present in an official capacity, acting for or on behalf of the United States. This amended statute was in force when the *Federal Rules of Criminal Procedure* were adopted on March 21, 1946. *Rule* 6(*d*) now provides, in so far as pertinent, that no persons other than grand jurors may be present during deliberations and voting.

In interpreting *Federal Criminal Rule* 6(*d*), the *Carper* opinion notes that the challenge to the validity of an indictment upon the ground of unauthorized persons being in the grand jury room is not new and that there is a long line of cases on this subject reaching back to the beginning of the grand jury system. The court frankly admitted that:

"* * * A large number of cases within the United States disclose a variety of judicial interpretations and rulings, and wide-spread differences of opinion upon substantially the same factual situations.

Two considerations have occupied the attention of most courts: (1) was the presence authorized, and (2) was the defendant prejudiced by such presence. Upon the first point there is strong conflict, many of the cases turning on a statute, with some decisions resting upon a strict reading of the statute, and others holding the presence authorized on the grounds of necessary implication. Upon the second point, was the defendant prejudiced, there is also a split of authority. A number of courts have refused to dismiss the indictment unless prejudice to the defendant is shown; others hold that mere unauthorized presence without more invalidates the indictment." (116 *F. Supp.,* at *pages* 818–819)

See comprehensive annotation at 4 *A. L. R.* 2d 392.

Moreover, the *Carper* case deals with the effect upon an indictment of the presence of persons who do not enjoy even a vestige of authorization because there is a complete lack of official connection with the grand jury or its proceedings.

Here, however, we are concerned with the presence of a clerk who has a recognized official status and is not a stranger

to the grand jury proceedings, as is a marshal, *United States v. Carper, supra,* or an accountant, *United States v. Heinze,* 177 *F.* 770 *(C. C., S. D. N. Y.,* 1910).

In *United States v. Smyth,* 104 *F. Supp.* 283 *(D. C. N. D. Cal.* 1952), the court considered whether an Assistant United States Attorney who apparently had appeared before the grand jury to present evidence, contrary to his superior's orders, should be deemed an unauthorized person. It was decided that as long as the offending individual remained in the employ of the Attorney-General he was vested with the authority of the United States and the indictment should not be vitiated. It was also suggested by the defendant that O'Gara, the Assistant United States Attorney, had been present during deliberative periods, contrary to *Federal Rule* 6 (*d*). In reply to this contention, it was said:

"* * * Of course, his presence while they were deliberating would be illegal, but the court is not going to take testimony of the grand jury upon the suggestion made. This would not remove jurisdiction from the grand jury unless O'Gara was one who had no right to be there at all. If O'Gara was an unauthorized person in that sense, then the court would be bound to quash the indictment." (At *page* 305)

Turning to our own jurisdiction, we find that the decisions prior to the adoption of *R. R.* 3 :3–6 conformed to the *dictum* in the *Smyth* case. The presence of the prosecutor in the grand jury room during deliberations or voting was not considered a proper basis for quashing an indictment in the absence of any participation or effort to influence on his part. *State v. McFeeley,* 136 *N. J. L.* 102 *(Sup. Ct.* 1947) ; *State v. Ellenstein,* 121 *N. J. L.* 304 *(Sup. Ct.* 1938). See *State v. Biehl,* 135 *N. J. L.* 268 *(Sup. Ct.* 1947).

The latest treatise in this area is found in a lucid and convincing opinion by Justice Jacobs in *Meszaros v. Gransamer,* 23 *N. J.* 179 (1957), where, in determining the effect of the failure to follow the statute in respect to the selection of juries, he said:

"* * * the single question now before us is whether substantial justice requires that there should be a new trial * * *."

Pointing out that Dean Wigmore has reviewed fully the history and status of the rule that harmless or non-prejudicial errors do not call for a new trial, Justice Jacobs continued:

"Throughout history the ever present goal has been to attain a better system of justice which affords to every person a fair, inexpensive and speedy trial, unshackled by needless technicality and formalism. This goal is frustrated by every new trial for a procedural error which did not impair the fairness of the first trial nor the justness of the original verdict."

What was said in reference to new trials is equally applicable to an attempt to invalidate an indictment because of the infraction of a procedural rule. The ruling is further clarified by Justice Weintraub in a concurring opinion where he points out that the characterization as directory of a statute which does not purport to confer discretion does not mean the officials chargeable thereunder are free to ignore it. Nevertheless, even though a rule is mandatory as to the administrative officials, with respect to the impact of a violation upon a judicial result it may well be described as merely regulatory.

In New Hampshire, in *State v. Canatella*, 96 *N. H.* 202, 72 *A.* 2d 507 (1950), the Supreme Court has held that even the completely unauthorized presence of a police officer, waiting to testify, during the testimony of the complaining witness did not afford a basis for quashing the indictment in the absence of prejudice, and in *Opinion of the Justices,* 96 *N. H.* 530, 73 *A.* 2d 433, 436 (*Sup. Ct.* 1950), it was said:

"* * * not every irregularity impedes justice or is fatal to the proper administration of the functions of grand juries * * *."

In *State v. Ellenstein, supra,* Justice Case, stressing the safeguards afforded a defendant, tersely observed:

"But society will suffer if its right to accuse is not kept measurably free of impeding technicalities,"

while Judge Learned Hand, in *U. S. v. Garsson,* 291 *F.* 646, 649 (*D. C. S. D. N. Y.* 1923), made this contribution:

"What we need to fear is the archaic formalism and the watery sentiment that obstructs, delays, and defeats the prosecution of crime."

■ While there is a sharp conflict of authority elsewhere, in our own jurisdiction the philosophy and rationale frequently expressed in our cases demonstrate quite conclusively that our own realistic approach channels us not to subscribe to "delays and defeats in the prosecution of crime" unless some prejudice is shown constituting a trespass upon fundamental justice. The violation of the rule here was not willful nor intentional, but a mere irregularity having no effect upon the meritorious determination by the grand jury of the evidence submitted for consideration. The rule was regulatory rather than essential or mandatory, and a mere technical violation, without proof of some circumstances at least suggesting prejudice, is not sufficient to invalidate the indictments returned.

## III. & IV.

The State moved to expunge the affidavits of Dilger and Greengrass and to punish these grand jurors for their disclosures in the affidavits. The court below, relying upon *State v. Silverman,* 100 *N. J. L.* 249 (*Sup. Ct.* 1924), held it was established that grand jurors are prohibited from doing the following: (1) they cannot be permitted to state how any member of the grand jury voted; (2) nor the opinion expressed by their fellows or themselves upon any question before them; (3) nor to disclose the fact that an indictment has been found against any person not in custody or under recognizance; (4) nor to state in detail the evidence on which the indictment is founded.

■ It is clear from the affidavits themselves, in so far as they refer to the presence of Mrs. Gormley, that they do not release any information which is required to be kept

secret within the orbit of this decision, since to this extent the affidavits relate only to objective events occurring in the jury room during the deliberation. The State agrees with so much of the ruling, and that phase of it is not here challenged. The balance of the information set forth in the affidavits may, however, exceed the limits permitted by our adjudications. It concerns statements made, opinions expressed, the audience reaction, and the vote taken.

As to these, the court below reflected they "might be considered as violating the secrecy of the proceedings within the grand jury." The court also determined, however, that they could not be the basis for discipline unless the State proceeded in accordance with R. R. 4:87. See R. R. 3:8.

The inquiry is raised, under these circumstances, as to the right of the State to appeal from a determination of the lower court which merely informed the State how to proceed in conformity with the rules. Instead of complying with the court's suggestion, the State appeals, and we doubt its right to do so.

The disposition below is not one on its merits, and the State was not deprived of its right to proceed if it complied with the proper procedure. In effect, the State is asking us to reverse an issue which the lower court has not finally adjudicated. This we refuse to do, and in view of our determination upon the main point involved, it may perhaps become unnecessary to do so.

The order and judgment dismissing the indictments is reversed. The indictments are restored and the cause is remanded to be proceeded with in accordance with this opinion.

*For reversal*—Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and WEINTRAUB—6.

*For affirmance*—None.