(No. 44781.—

THE PEOPLE *ex rel.* BARNABAS F. SEARS, Special State's Attorney, Petitioner, v. PHILIP ROMITI, Judge, *et al.,* Defendants.

*Opinion filed December 17, 1971.—Rehearing denied Jan. 14, 1972.*

GOLDENHERSH, KLUCZYNSKI, and WARD, JJ., dissenting.

BARNABAS F. SEARS, Special State's Attorney, WAYLAND B. CEDARQUIST, HOWARD T. SAVAGE,

ELLIS E. REID and JAMES W. COLLINS, all of Chicago, for petitioners.

GEORGE J. COTSIRILOS, LEONARD R. HARTEN-FELD, CAMILLO VOLINI, THOMAS P. SULLIVAN, JOHN P. COGHLAN and WILLIAM J. MARTIN, all of Chicago, for respondents.

JAMES J. DOHERTY, of Chicago, for *amicus curiae* Illinois Public Defenders' Association.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

This case again presents questions arising in connection with the special grand jury convened by the circuit court of Cook County to investigate violations of law by persons involved in what has come to be known as the Black Panther raid, which took place in December of 1969. The circumstances under which the grand jury was convened and many of the earlier proceedings are described in our opinion in *People v. Sears* and *People ex rel. Sears v. Power* which were consolidated by this court and are reported in 49 Ill.2d 14.

The first of those cases was an appeal from two orders holding Barnabas F. Sears, the Special State's Attorney appointed by the circuit court, in contempt of court. The order which held him in contempt for refusing to subpoena witnesses as directed by the trial court was reversed, and the order which held him in contempt for statements made outside the courtroom was reversed and remanded for a hearing. The second case was an original action of *mandamus* and prohibition brought by the Special State's Attorney against the Honorable Joseph A. Power, presiding judge of the criminal division of the circuit court of Cook County. The conclusions reached by the court in that case appear in the following excerpts from the opinion:

"It is the opinion of the majority of this court that the circuit court, in the exercise of its inherent supervisory powers over the grand jury has jurisdiction to order the transcript of the proceedings before the grand jury submitted to it for examination as provided in the order entered on May 17, 1971, and we so hold. The petition for a writ of *mandamus* is, therefore, denied.

"With respect to the circuit court's announcement of his availability to those jurors who wish to communicate with him privately, it is our opinion that such procedure is not desirable and presents the possibility of infringement upon the historic independence of the grand jury and its proceedings. We hold that the court has jurisdiction to meet *in camera* with the grand jury. Insofar as the petitioners seek a writ of prohibition to preclude *in camera* communication between the court and individual grand jurors, the writ of prohibition will issue, and in all other respects the petition for writ of prohibition is denied." 49 Ill.2d 14, at 36.

Our opinion was handed down on June 23, 1971. On the following day the grand jury met and voted not to rescind an indictment which it had previously voted on April 21, 1971. On June 25, that indictment, sealed in accordance with the court's order, was returned in the circuit court. On August 24, 1971, after another original action (No. 44586) had been filed in this court by the special prosecutor against the presiding judge, to compel the opening of the indictment, it was opened. The indictment charged Edward V. Hanrahan, State's Attorney of Cook County, Richard Jalovec, an Assistant State's Attorney, and 12 police officers with conspiracy to obstruct justice.

By oral statements on August 31, 1971, after the special grand jury had been discharged, the presiding judge

gave the defendants permission to interview members of the special grand jury except concerning deliberations and the vote of any juror. The presiding judge then assigned the case to Judge Philip Romiti.

Pursuant to the authorization of the presiding judge, with which Judge Romiti declined to interfere, the attorneys for the defendants obtained an unsworn statement from one grand juror and a transcript in question and answer form from another, who swore to the truth of his answers. Two other grand jurors signed affidavits stating that if they were asked the same questions their answers would be the same. Motions to dismiss the indictments were filed, to which the statement and affidavits were attached. The Special State's Attorney and his assistants filed counter-affidavits, and on October 22, 1971, Judge Romiti ordered that a hearing be held to determine the truth of the matters charged in the statement and affidavits, and delivered an opinion explaining the reasons for his ruling. This original action, seeking a writ of prohibition to bar the hearing and a writ of *mandamus* to compel the vacation of the order setting the matter for hearing, was then filed by the Special State's Attorney.

At the outset we encounter the contentions of the defendants that this case is not an appropriate one for the exercise of original jurisdiction and that in any event *mandamus* and prohibition do not lie in the circumstances here presented. Running through both contentions are the propositions, first, that the extraordinary writs raise only questions concerning the jurisdiction of the trial court, and, second, that these writs should not be permitted to be used as substitutes for appeals. As general statements, both propositions are sound. But as pointed out in our earlier opinion in this matter, "This court, however, charged with the supervisory and administrative powers and duties provided in the constitution, may, when appropriate, award these writs even though all of the normal criteria are not present. *People ex rel. General Motors v. Bua, 37 Ill.2d*

*180, 192; People ex rel. Continental Air Transport Co.,
Inc. v. Strouse, 41 Ill.2d 567, 570." People v. Sears
(1971), 49 Ill.2d 14, 33;* see also, *People ex rel. Terry v.
Fisher, 12 Ill.2d 231.*

The primary question raised in this case is whether a
trial court may conduct a hearing to receive the testimony
of grand jurors concerning charges that relate to the
demeanor of a prosecutor while examining witnesses
before the grand jury and to the quality of his argument or
advice to them. Charges of this type have been leveled
against the prosecutor by the indicted defendants in this
case in connection with their motions to quash the
indictment, and in our opinion the importance of the
question justifies the exercise of original jurisdiction of
this Court.

There has been an increasing tendency in criminal
cases to try some person other than the defendant, and
some issue other than his guilt. What was stated by Mr.
Justice Black in *Costello v. United States,* in rejecting the
contention that an indictment is open to challenge because
only hearsay evidence was presented to the grand jury, is
pertinent here. "If indictments were to be held open to
challenge on the ground that there was inadequate or
incompetent evidence before the grand jury, the resulting
delay would be great indeed. The result of such a rule
would be that before trial on the merits a defendant could
always insist on a kind of preliminary trial to determine
the competency and adequacy of the evidence before the
grand jury." 350 U.S. 359, 363, 100 L.Ed. 397, 402, 76
S.Ct. 406.

It is important, therefore, that we analyze carefully
the statute and the judicial decisions that are relied upon
to authorize such a proceeding. As the trial judge pointed
out in his opinion, prior to the 1965 amendment of
section 112—6(b) of the Code of Criminal Procedure
(Ill.Rev.Stat. 1969, ch. 38, par. 112—6), "previously
existing case law in Illinois exhibited the philosophy that

the secrecy of the grand jury could only rarely, if ever, be invaded. The classic statement of this line of holding can be found in *Gitchell v. People.*" In that case the court stated: "In furtherance of justice and upon grounds of public policy, the law requires that the proceedings of grand juries shall be regarded as privileged communications, and that the secrets of the grand jury room shall not be revealed. \*\*\* The hardship, which an accused party may suffer because he is not allowed to go behind an indictment to see how it has been found, will be small compared with the incalculable mischief which will result to the public at large from a disclosure of what the law deposits in the breast of a grand juror as an inviolable secret. An innocent person will not be hurt by being forbidden to thus go behind the indictment, 'for he can always vindicate himself in a trial upon the merits.' " *Gitchell v. People (1893), 146 Ill. 175, 183, 185.*

Concerning section 112–6(b), the trial court stated:

"Prior to the 1965 amendment, Section 112–6(b) limited disclosure to transcripts of the testimony of the witnesses to be used by the state at trial. In 1965, the Legislature broadened disclosure to cover all situations. By broadening the scope and availability of disclosure, the amendment tacitly recognized the policy, the current trend and modern view, that once an indictment is returned, the rationale underlying and the compelling reasons calling for the maintenance of secrecy are at an end.

"The Committee Comments relating to this section of the Criminal Code are of great value for the reason that the revised provisions of Section 112–6, relating to this topic, have not been passed upon by the Illinois Courts of Review, and no case, to this court's knowledge, exists in Illinois interpreting this provision. The Commit-

tee Comments expressly state and refer to a related rule contained within the Federal Rules of Criminal Procedure, to-wit, Rule 6(e). The similarity between the Federal rule and the Illinois provision is strong and it seems obvious that Illinois has been brought into line with modern Federal procedures in this regard."

As the trial court indicated, the case for allowing the kind of preliminary inquiry that is here involved rests basically on section 112–6(b) of the Code of Criminal Procedure. The meaning of this statutory provision was not discussed in the briefs of the parties in the earlier case, and it is mentioned only in passing in the opinion of this court. (49 Ill.2d 14, 34.) As the trial court stated, there are no decisions interpreting it.

When the Code of Criminal Procedure was originally enacted in 1963, section 112–6(b) provided: "When the State uses, for the purpose of examining any witness, any part of a transcript of matters occurring before the Grand Jury, that portion of the transcript may be disclosed when the court, preliminary to or in connection with a judicial proceeding, directs such in the interests of justice." This provision was concerned with the use of transcripts of grand jury proceedings for impeachment purposes at trial. It was not included in the draft of the Code submitted to the General Assembly, and its validity was sharply questioned. (See Calkins and Wiley, "Grand Jury Secrecy Under the Illinois Criminal Code—Unconstitutional," 59 Nw. L. Rev. 577 (1964). See also *People v. Johnson (1964), 31 Ill.2d 602.)* The basic constitutional objection concerned the absolute control which the statute gave to the prosecution over access to the testimony of witnesses before the grand jury for purposes of impeachment.

Section 112–6(b) was amended in 1965, apparently in an effort to remove this ground of criticism. It now reads: "Matters occurring before the Grand Jury other than the deliberations and vote of any grand juror may be

disclosed when the court, preliminary to or in connection with a judicial proceeding, directs such in the interests of justice." That the amended provision was also concerned with the disclosure of testimony before the grand jury for purposes of impeachment or discovery appears from this court's Rule 412, which relates to discovery before trial in criminal cases and became effective October 1, 1971. In pertinent part this Rule states that "*** the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control: *** (iii) a transcript of those portions of grand jury minutes concerning testimony of the accused and relevant testimony of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial." The Committee Comments state: "Paragraph (a), subparagraph (iii), adopts the A.B.A. Standard for production of grand jury minutes. In terms of Illinois practice it makes mandatory disclosure of what is now discretionary under the second sentence of section 112—6(b) of the Code of Criminal Procedure."

The Federal Rules of Criminal Procedure were adopted in 1946. Rule 6(e) of those Rules differs sharply from the Illinois statute, in that it expressly authorizes disclosure upon a showing "that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Since the Federal Rule was the model for the Illinois provisions, the omission of a comparable provision authorizing disclosure in connection with a motion to dismiss an indictment is significant. Moreover, so far as we have been able to ascertain, no Federal court has held that Federal Rule 6 authorizes the use of affidavits of grand jurors, or their testimony, in connection with an attack upon the validity of an indictment on the ground of misconduct of the prosecutor. After noting the absence of Federal decisions in this area, one treatise on Federal procedure concludes: "Thus, the conduct of the prosecution in obtaining an indictment

is virtually unreviewable." 8 Moore, Federal Practice, Sec. 6.04 at 6–22. See also 1 Wright, Federal Practice and Procedure, Sec. 108.

For the reasons indicated we are of the opinion that section 112–6(b) does not authorize the kind of hearing proposed to be conducted by the trial court. As has been stated, the previous decisions of this court do not sanction such a hearing. Nor are we persuaded to initiate the procedure here sought to be employed by the scattered and sporadic decisions of other courts which are relied upon to justify the use of affidavits or testimony of grand jurors to show misconduct during grand jury proceedings.

Three of those decisions, *United States v. Farrington (N.D.N.Y. 1881), 5 F. 343; United States v. Kilpatrick (W.D.N.C. 1883), 16 F. 765;* and *United States v. Wells (D.Ida. 1908), 163 F. 313,* were by single Federal Judges. The first two involved the use of affidavits or testimony of grand jurors to show the presence before the grand jury, and the conduct, of persons having no official connection with the proceeding. In the *Wells* case, characterized as "extraordinary" by the United States Court of Appeals for the Third Circuit in *United States v. Bruzgo (1967), 373 F.2d 383,* affidavits and testimony of grand jurors were received on the defendant's motion to quash an indictment because of misconduct of the prosecutor before the grand jury. Of the cases decided by reviewing courts, in *State v. Will (1896), 97 Iowa 58, 65 N.W. 1010,* the Supreme Court of Iowa held that affidavits of grand jurors were competent to show that the judge entered the grand jury room and directed the indictment of named persons, including the defendant. In *State v. Kifer (1937), 186 La. 674, 173 So. 169,* the Supreme Court of Louisiana held that grand jurors might properly testify that the prosecutor was present during the deliberations of the grand jury. *State v. Manney (1957), 24 N.J. 571, 133 A.2d 313,* involved the use of affidavits to establish the presence of an allegedly unauthorized person before the grand jury. In *Attorney*

*General v. Pelletier (1922), 240 Mass. 264, 134 N.E. 407,* the testimony of grand jurors was held to have been properly received in an action brought by the Attorney General to remove a local prosecutor from office on charges that he had not properly performed his duties—specifically that he had sought leniency for a friend.

The strictness with which this court has previously enforced the rule against the use of affidavits of grand jurors is demonstrated by *People v. Arnold (1910), 248 Ill. 169, 171-2.* There the court said: "There was a motion to quash the indictment on the ground that Alta Rosenstiel and her father and mother were all present in the grand jury room at the same time. The proceedings before a grand jury must be kept strictly secret, and that could not be done if witnesses should be present during the examination of each other. The rule, therefore, is that one witness must never be permitted to be present at the examination of another. (17 Am. & Eng. Ency. of Law,—2 ed.—1204.) The court refused to consider the affidavits of grand jurors with reference to the alleged fact and did not thereby commit error. *(Gitchell v. People, 146 Ill. 175.)"*

It is undisputed that the indictment in this case was prepared before the grand jurors had determined to indict. Section 112—4 of the Code of Criminal Procedure provides: "(c) If 12 grand jurors concur that the evidence before them constitutes probable cause that a person has committed an offense the State's Attorney shall prepare a Bill of Indictment charging that person with such offense." (Ill.Rev.Stat. 1969, ch. 38, par. 112—4.) The defendants argue that this provision establishes a time sequence which must be adhered to, and "that once a true bill is voted, the indictment then prepared must be submitted to the grand jurors for their approval." And because that time sequence was not adhered to, they argue that the indictment must be dismissed.

Section 17 of the Jurors Act has, since its enactment

in 1874, contained the following provisions: "After the grand jury is impaneled, it shall be the duty of the court to appoint a foreman, who shall have power to swear or affirm witnesses to testify before them, and whose duty it shall be, when the grand jury, or any twelve of them, find a bill of indictment to be supported by good and sufficient evidence, to indorse thereon 'A true bill;' where they do not find a bill to be supported by sufficient evidence, to indorse thereon 'Not a true bill;' and shall, in either case, sign his name as foreman, at the foot of said endorsement, and shall also, in each case in which a true bill shall be returned into court as aforesaid, note thereon the name or names of the witness or witnesses upon whose evidence the same shall have been found." (Ill.Rev.Stat. 1969, ch. 78, par. 17.) The Code of Criminal Procedure did not amend or repeal this provision. Nor do the Comments of the drafting committee indicate any purpose to alter the procedure it describes.

In our opinion the contention of the defendants is unsound. The "bill" referred to in the expression "true bill" *is* the indictment. The definition of a "bill of indictment" is: "A formal written document accusing a person or persons named of having committed a felony or misdemeanor, lawfully laid before a grand jury for their action upon it. \*\*\* If the grand jury decide that a trial ought to be had they indorse on it 'a true bill;' if otherwise, 'not a true bill' or 'not found.' " Black's Law Dictionary, Revised Fourth Edition.

It cannot be said, we think, that the General Assembly intended, by section 112—4 of the Code, that every indictment prepared before the grand jury has voted that probable cause exists should be held invalid. The highly technical notion that an indictment is invalid unless the grand jury has voted on the existence of probable cause with no bill of indictment before it is contradicted both by the definition of a "bill of indictment" and the clear

indication in the Jurors Act that the indictment is before the grand jury when they vote upon whether or not it is a "true bill."

The defendants also contend that the indictment must be dismissed because of prejudicial publicity. There has indeed been extensive publicity: the indictment is based in part upon the defendants' newspaper interviews and TV re-enactment of occurrences in connection with the execution of the search warrant in this matter, and there has been subsequent publicity about the events that gave rise to the convening of the special grand jury, and about each subsequent occurrence.

While the Supreme Court of the United States has overturned criminal convictions where adverse publicity denied a defendant a fair trial, it has specifically refused to hold that a grand jury indictment may be invalidated on the basis of pre-indictment publicity. (Compare *Sheppard v. Maxwell (1966), 384 U.S. 333, 16 L.Ed.2d 600, 86 S.Ct. 1507*, with *Beck v. Washington (1962), 369 U.S. 541, 546, 8 L.Ed.2d 98, 105, 82 S.Ct. 955.*) It has been pointed out that to permit such a challenge would place a severe strain on the effective administration of criminal justice, while it would do nothing to insure the fair and impartial treatment of defendants at trial. See, Note, 111 U. Pa. L. Rev. 1000 (1963).

The adverse effect of prejudicial publicity upon the trial of a defendant can be eliminated or alleviated by transferring the case for trial in another county. This remedy is unavailable, however, in the case of pre-indictment publicity, for an indictment must be returned by a grand jury of the county in which the alleged offense occurred. To permit such an attack upon an indictment would tend to immunize persons involved in events upon which the news media concentrated their attention.

Considerations of this kind have led the courts of other States to refuse to permit a defendant to challenge an indictment because of the possible effect of adverse

publicity on a grand jury. *(Commonwealth v. Monahan (1965), 349 Mass. 139, 154-6; 207 N.E.2d 29, 39-40; Piracci v. State (1955), 207 Md. 499, 514-5, 115 A.2d 262, 268-9; State v. Winsett (Super. Ct. Del. 1964), 200 A.2d 692, 693-4.)* That position is sound in our opinion, and we hold that an attack upon a grand jury indictment will not lie upon the ground of pre-indictment publicity. In so doing, we reaffirm the following statement made by this court in *People v. Looney (1924), 314 Ill. 150, 155:* "An indictment cannot be quashed because of public sentiment in the community or public excitement because open crime has been committed and gone unpunished or because newspapers or individuals or associations have denounced crime or individuals charged with crime."

For the reasons stated in this opinion, a writ of *mandamus* will issue commanding the trial court to expunge its order granting the defendants a hearing on their challenges to the indictment which are discussed in this opinion, and a writ of prohibition will issue restraining the trial court from taking any action in relation to those challenges to the indictment.

*Writs awarded.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent from the majority opinion. Clearly, the motion for leave to file the petition was improvidently allowed and the petition should be denied. I am aware of our prior decisions holding that writs of prohibition and *mandamus* may be awarded even though all of the normal criteria are not present but they do not support the issuance of the writs in the absence of all of the normal criteria. Historically, these writs are sparingly used and should not be invoked as a piecemeal appeal from an interlocutory nonappealable order which the circuit court admittedly has jurisdiction to enter. I do not in this dissent express any opinion with respect to the validity of the indictment. I simply point out that the decision of the

majority has foreclosed, without valid reason, an inquiry germane to the indictment's validity and clearly authorized by statute and our prior decisions.

The majority opinion, it should further be pointed out, is, if not unique, somewhat unusual, in that it rejects the contentions of all the parties and promulgates a rule which renders immune to judicial scrutiny the conduct of a State's Attorney before a grand jury no matter how violative of due process or fundamental fairness. Not even the Special State's Attorney contends for this result. His position was declared earlier in *People v. Sears, 49 Ill.2d 14,* where his brief stated: "Relator Sears does not contend that his conduct before that Grand Jury is above judicial scrutiny. It should not be. *(Gitchell v. People, 146 Ill. 175, 187.)* But that scrutiny should be according to law, *invoked by persons after indictment,* as every case in the book demonstrates." And here he states: "The question here is what constitutes a sufficient showing to warrant the Court's order for a general hearing as to the conduct of the Special State's Attorney, the effect of which is to try the prosecutor and the grand jurors before any trial of the defendants on the indictment duly returned. Relator Sears has never contended that the conduct of the prosecutor before the grand jury was not subject to judicial scrutiny, but has always claimed that it must be judicial scrutiny according to law. It is therefore highly important at the outset to have clearly in mind the law which permits the type of public trial envisioned by the Court's order, presently set for November 8, 1971. The leading case is Commonwealth v. Smart, 368 Pa. 630; 84 A.2d 782. The court discussed the conflicting principles of public policy involved in 84 A.2d on p. 785 and then said on p. 786: 'Even though it might be possible to imagine a situation which presented justification, and even necessity, to investigate the acts and conduct of a prosecuting officer during the course of his attendance

upon the Grand Jury, it is certainly true that such an investigation should never, under any circumstances, *be instituted except on the basis of credible, detailed, sworn and persuasive averments by witnesses of the irregularities complained of.' (Emphasis ours.)* [*i.e.* Sears'] "

The majority in reaching its decision relies upon *Gitchell v. People, 146 Ill. 175,* and dismisses as "scattered and sporadic" the decisions which clearly demonstrate the jurisdiction of the circuit court to enter the order and the propriety of its so doing. *Gitchell,* decided in 1893, involved an attempt to show by affidavits that an indictment had been returned on the vote of an insufficient number of grand jurors. At that time the pertinent statute provided: "No grand juror or officer of the court or other person shall disclose that an indictment for felony is found or about to be found against any person not in custody or under recognizance, except by issuing process for his arrest, until he is arrested; nor shall any grand juror state how any member of the jury voted, or what opinion he expressed on any question before them; and the court in charging said jury, shall impress upon their minds the provisions of this section. A violation of this section shall subject the offender to an attachment as for contempt of court, in which he may be fined not exceeding $500." Ch. 38 sec. 595, Starr & Curtis's Annotated Illinois Statutes.

How *Gitchell* can be relied on by the majority is not apparent. In the motion pending before the trial court the defendants do not seek to inquire as to how any grand juror voted. Further, as stated by the majority, the pertinent statute now contains the following provisions: "Matters occurring before the Grand Jury other than the deliberations and vote of any grand juror may be disclosed when the court, preliminary to or in connection with a judicial proceeding, directs such in the interest of justice." (Ill.Rev.Stat. 1969, ch. 38, par. 112—6.) I have noted already that the Special State's Attorney cited *Gitchell* as

authority for the proposition that his conduct before the grand jury was not and should not be above judicial scrutiny.

The majority cites *People v. Arnold, 248 Ill. 169,* as authority for "the strictness with which this court has previously enforced the rule against the use of affidavits of Grand Jurors." *Arnold* was decided in 1910, 55 years before the relevant amendment to section 112—6 of the Code of Criminal Procedure of 1963 (Ill.Rev.Stat. 1969, ch. 38, par. 112—6), and rests solely on a citation to *Gitchell,* a case patently not in point. Also, the opinion in *Arnold* shows beyond question that the court considered the matters sought to be presented by the affidavits (248 Ill. 169, 172), and held "there could have been no prejudice to the defendant from anything that occurred before the Grand Jury."

The majority traces the origin of the 1965 amendment of section 112—6 to Rule 6(e) of the Federal Rules of Criminal Procedure. We agree that failure to include in the statute the provision of 6(e) for disclosure upon a showing "that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury" is significant. Under the prior holdings of this court, however, its significance is precisely opposite to that attributed to it by the majority. A basic rule of statutory construction is that the enumeration of certain matters in a statute implies the exclusion of all others, and the corollary rule is that exceptions other than those designated by statute cannot be read into it. *(In re Estate of Tilliski, 390 Ill. 273, 283.)* It is apparent, therefore, that the amendment to section 112—6 authorizes disclosure "in the interest of justice" and not as the majority holds—in the interests of justice except under circumstances of which the majority does not approve.

We advert now to the "scattered and sporadic decisions" to which the majority refers. We start with our opinion in *People v. Sears, 49 Ill.2d 14,* wherein we held

that section 112—6 provides for disclosure of matters occurring before the grand jury other than its deliberation and vote. In *People v. Ianniello, 21 N.Y.2d 418, 424, 235 N.E.2d 439, 443 (1968)*, the Court of Appeals of New York said: "Courts have a particular responsibility to prevent unfairness in Grand Jury proceedings for, the Grand Jury is an 'arm of the court' [citations]."

We refer further to *In re Fried (2d cir.) 161 F.2d 453* and *Austin v. United States (4th cir.), 297 F.2d 356,* also cited in our earlier opinion.

In *People v. Petruso, 35 Ill.2d 578*, it is recognized by this court that a showing of improper influence, undue prejudice or "other matters which might have caused a true bill to be improperly returned" may result in the quashing of an indictment. Just how this type of impropriety may ever be shown under the majority's view is not discernible.

In *United States v. Remington (2d cir.), 191 F.2d 246,* the court clearly recognized that an indictment should be quashed if undue influence over the grand jury can be shown. Even the treatise cited by the majority (Wright, Federal Practice and Procedure) does not support the conclusion that the court did not have jurisdiction to order the inquiry. It only states that the courts have "ordinarily denied such requests on the ground that the defendant has not made a sufficiently strong showing that such grounds may exist."

Here the request for the hearing is supported by the affidavits of three grand jurors and the unsworn statement of a fourth. They charge that the Special State's Attorney frequently went off the record and made derogatory comments with respect to the veracity of some of the witnesses, that one of his assistants referred to a witness as a whore, a slut and a liar, that the Special State's Attorney expressed the opinion that the evidence of guilt was "overwhelming," that he "scolded" the grand jury for voting no bills on the preceding day, that when one of the

grand jurors stated that an indictment was a very serious thing, the Special State's Attorney said, "Don't worry, an indictment is nothing but a piece of paper." It is also said that he stated that an indictment did not do anybody any harm because if the people named were not guilty they would be found not guilty at trial.

If affidavits charging such serious improprieties do not furnish a sufficient basis for the hearing ordered by the circuit court, then it is difficult to perceive the circumstances under which a hearing would be warranted.

The opinion of the trial court demonstrates the legislative concern and wisdom underlying the amendment to section 112–6, which makes possible under exceptional circumstances a judicial scrutiny of the proceedings before the grand jury, a scrutiny which even the Special State's Attorney admits is authorized by law. The action taken by the majority today renders meaningless the principles and protections of due process insofar as they apply to proceedings before a grand jury. As I read the majority opinion the action is taken to counteract the allegedly increasing tendency to try some person other than the defendant. This, of course, does not warrant the far-reaching action taken.

I repeat that I make no judgment as to whether the indictment here should be dismissed or as to the veracity of the affiants.

It is a matter of regret that the majority has erroneously taken the position that no accused, however improper may have been the presentation to the grand jury, may seek to show this circumstance. The importance of the question goes far beyond this case.

KLUCZYNSKI and WARD, JJ., join in this dissent.